UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00151-JAW |
| | ) | |
| JONATHAN BOWERS | ) | |

**SUPPLEMENTAL ORDER ON SENTENCING ISSUES AND ORDER ON MOTION FOR VIDEO HEARING**

A defendant asks the Court to reconsider its ruling on whether the defendant is subject to the enhanced provisions of the Armed Career Criminal Act (ACCA) in light of recent United States Supreme Court and First Circuit Court of Appeals caselaw. The defendant also asks the Court to allow his sentencing to proceed by video pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act. The Court considered the new caselaw and concludes that the caselaw does not change its ruling on the application of the ACCA to the defendant due to his prior state of Maine burglary convictions. The Court further concludes that the defendant has met the standards under the CARES Act for an immediate hearing by video.

**I.   BACKGROUND**

Jonathan Bowers is awaiting sentencing on one charge of possession of a firearm after having previously been convicted of a number of felonies, a violation of 18 U.S.C. § 922(g)(1). *Indictment* (ECF No. 1). On November 6, 2018, the Court ruled that Mr. Bowers is subject to the enhanced provisions of the Armed Career Criminal Act (ACCA) and its corresponding guideline provision because of his four state of Maine burglary convictions. *Order on Sentencing Issues* at 2-12 (ECF No. 91)

(*Sentencing Order*). In that order, the Court discussed pending cases on this issue before the United States Supreme Court and the First Circuit Court of Appeals and suggested that "the status of the Maine burglary statute as an ACCA predicate may well be clarified by the Supreme Court or by the First Circuit before Mr. Bowers is scheduled for a sentencing hearing, and if so, this Court will of course follow the lead of the higher appellate courts to which it owes allegiance." *Id.* at 11-12.

On December 10, 2018, the United States Supreme Court issued *United States v. Stitt*, 139 S. Ct. 399 (2018). On December 17, 2018, during a conference of counsel, the Court and the parties agreed to wait until the First Circuit Court of Appeals issued a decision in *United States v. Yeaton*, No. 2:04-cr-00123-GZS-1, one of the related pending cases, before continuing with the conference and the sentencing. *Min. Entry* (ECF No. 95). On January 29, 2020, the First Circuit Court of Appeals issued a judgment in *Yeaton*. *J.*, *Yeaton v. United States*, No. 17-1452 (Jan. 29, 2020) (*Yeaton J.*).

The Court held a presentence conference on February 18, 2020, during which it set deadlines for supplemental sentencing memoranda. *Min. Entry* (ECF No. 97). The Court set the sentencing hearing for April 28, 2020, *Notice of Hr'g* (ECF No. 98); however, due to the ongoing COVID-19 pandemic, the sentencing hearing has been delayed. On March 10, 2020, Mr. Bowers filed his supplemental sentencing memorandum. *Suppl. Mem. in Aid of Sentencing* (ECF No. 99) (*Def.'s Mem.*). The United States of America (Government) filed its responsive supplemental sentencing memorandum on May 6, 2020. *Gov't's Resp. to Def.'s Suppl. Sentencing Mem.* (ECF

2

No. 102) (*Gov't Mem.*).  On August 6, 2020, Mr. Bowers filed an unopposed motion for video sentencing as allowed by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281, 528-29 (2020).  *Mot. for Video Sentencing* (ECF No. 106) (*Def.'s Video Mot.*).

## II.   PARTIES' POSITIONS

### A.   Jonathan Bowers' Supplemental Memorandum

Mr. Bowers concedes that in *Yeaton* and the related decisions, the First Circuit held that "[w]ith its decision in *United States v. Stitt*, the Supreme Court seemingly has rejected" the claim that Maine's burglary statute is broader than the generic definition of burglary under the ACCA because it allows for an automobile adapted for overnight accommodations to qualify as a dwelling.  *Def.'s Mem.* at 1 (quoting *J.*, *Black v. United States*, No. 18-1311 (Jan. 28, 2020) (*Black J.*)).  Yet, Mr. Bowers argues, "Maine's burglary statute is not a generic statute even after *Stitt*" because of decisions from the Maine Supreme Judicial Court and Maine trial courts, including the court that sentenced Mr. Bowers to his underlying burglary offenses.  *Id.* at 2.

Mr. Bowers asserts that the First Circuit "has already recognized that a statute allowing for burglary upon a finding of illegal entry into a wider array of places other than strictly a building (e.g., automobiles and vending machines) is overbroad" and that Maine's definition of burglary includes other places besides buildings.  *Id.* (citing *United States v. Farrell*, 672 F.3d 27, 30 (1st. Cir. 2012); 17-A M.R.S. § 2(24)).  He then reiterates the points he made in his original sentencing memorandum about the ways the Maine burglary statute is broader than the general

3

definition, citing *State v. Hillman*, 565 A.2d 1012 (Me. 1989), and using the facts of his own case as examples. *Id.* at 2-3; *see also Mem. in Aid of Sentencing* at 8-9 (ECF No. 86). He adds a short discussion of *State v. Cook*, 2010 ME 85, ¶ 13, 2 A.3d 333, in which the Maine Law Court found that stealing piping from underneath a seasonal camp qualified as burglary. *Id.* at 2.

Mr. Bowers also argues that Maine's burglary statute is overbroad because it allows for "conviction without the need for a defendant to have ever in fact entered a structure" by creating a "permissible inference that a defendant committed the crime of burglary when he is in exclusive possession of evidence from a recently occurred burglary." *Id.* at 3 (citing 17-A M.R.S. § 361-A(1)).

### B.     The Government's Supplemental Memorandum

The Government refers the Court to its previous sentencing memoranda and reasserts those arguments. *Gov't's Mem.* at 1 (citing *Gov't's Sentencing Mem.* (ECF No. 87); *Gov't's Sentencing Resp.* (ECF No. 89)). The Government maintains that *Stitt* reaffirmed the holding in *Taylor v. United States*, 495 U.S. 575, 597-98 (1990), that generic burglary includes structures that are not buildings. *Id.* at 2. It states, "between *Taylor* and *Stitt*, the Supreme Court has left no room to presume that burglary as defined by Maine law is broader than the enumerated offense in the ACCA." *Id.* It adds that the First Circuit precedent finding that the Maine burglary statute is an ACCA predicate offense "remains unchanged" after *Stitt*. *Id.* at 2 (citing *Yeaton J.*).

4

The Government next addresses Mr. Bowers' references to *Cook* and the facts in his own case. *Id.* at 3-4. It asserts that the Law Court in *Cook* found the area underneath the camp to be part of the structure because it was closed and secured against weather and thus that the ruling in *Cook* does not rely on an overbroad theory of burglary. *Id.* at 3. Regarding the facts of Mr. Bowers' case, the Government argues that Mr. Bowers did not litigate whether the place he burglarized constituted a structure under Maine law during his guilty plea and that, regardless, the recorded description does not necessarily fall outside the scope of generic burglary. *Id.* at 2-3.

Finally, the Government says that Mr. Bowers' argument concerning the impact of 17-A M.R.S. § 361-A(1) fails because, among other reasons, the First Circuit has ruled against this very argument in *United States v. Mohamed*, 920 F.3d 94 (1st Cir. 2019). *Id.* at 4-5.

C. **Jonathan Bowers' Motion for Video Sentencing**

Mr. Bowers asks this Court to "find that sentencing in his case cannot be further delayed without serious harm to the interests of justice and order his sentencing to be held by video." *Def.'s Video Mot.* at 1. He consents to a video sentencing and refers to the standard set in the CARES Act and the District of Maine's General Order 2020-11: that the case cannot be further delayed without serious harm to the interests of justice. *Id.* Mr. Bowers then outlines the procedural history of this case and explains that, since the First Circuit has not yet "resolve[d] definitively" the issues in his case, he intends to raise these issues on appeal. *Id.* at 2 (citing *J.*, *United States v. Bender*, No. 16-2062 (Jan. 28, 2020) (*Bender J.*). He

5

argues that his case presents the same "alternative reasons" why the Maine burglary statute is overbroad that the defendant in *Bender* argued but that the First Circuit did not consider the argument in *Bender* because it was raised too late. *Id.* at 2-3.

Mr. Bowers says that, according to the Court's calculations in its first sentencing order, his sentencing range would be thirty-seven to forty-six months if he was not subject to the ACCA mandatory minimum. *Id.* at 3 (citing *Sentencing Order* at 26). He explains that he plans to appeal his sentence if this Court applies the fifteen-year mandatory minimum sentence under the ACCA and that once he appeals, he will be eligible to seek release under 18 U.S.C. § 3143(b). *Id.* Thus, Mr. Bowers argues, since he has served over thirty-four months without considering good time credit, "any continued delay of sentencing in [his] case poses a serious harm to the interests of justice . . .." *Id.* He adds that the Government does not oppose his request for video sentencing. *Id.*

## III. DISCUSSION

The Court incorporates its earlier Sentencing Order[1] to the extent that the parties reiterate their arguments and limits its discussion to the relevant caselaw since November 2018 and Mr. Bowers' new arguments.

---

[1] Reviewing its November 6, 2018, Sentencing Order, the Court noticed a factual error in its description of Mr. Bowers' criminal history, and it uses this order as an opportunity to correct it. At page nine of the Sentencing Order, the Court wrote that "Mr. Bowers was convicted of violating both 17-A M.R.S. § 401(1)(A) and § 401(1)(B)(4) . . .." *Sentencing Order* at 9. This is not correct at least as to all four of his burglary convictions.

Under Maine law, burglary, a Class C crime under 17-A M.R.S. § 401(1)(A), may be charged as a Class B crime under 17-A M.R.S. § 401(1)(B)(4) if it is the burglary of a dwelling place. 17-A M.R.S. § 401(1)(B)(4) ("Violation of this subparagraph is a Class B crime"). As described in the Third Revised Presentence Investigation Report (PSR), two of Mr. Bowers' burglary convictions were to dwelling places and the state charged them as Class B crimes. *See PSR* ¶¶ 31, 36. The two other burglary convictions, the burglary conviction in paragraph thirty and the burglary conviction under

6

### A.   Updated Legal Landscape on Maine's Burglary Statute as a Valid Predicate Offense Under the ACCA

#### 1.   *United States v. Stitt*

In *Stitt*, the Supreme Court was faced with "whether the statutory term 'burglary' includes burglary of a structure or vehicle that has been adapted or is customarily used for overnight accommodations." 139 S. Ct. at 403-04. It concluded that it does. *Id.* at 404. To answer this question, the Supreme Court reiterated its definition of a generic "burglary" in *Taylor*, namely that a burglary is "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.* at 405-06 (quoting *Taylor*, 495 U.S. at 598).

The *Stitt* Court then turned to the statutory definitions of burglary in the cases before it from Tennessee and Arkansas. *Id.* at 406. The Court had noted earlier that both state statutes defined burglary to include structures or vehicles customarily used for overnight accommodation. *Id.* at 403-04. The Supreme Court observed that when Congress enacted the ACCA in 1986, it "intended the definition of 'burglary' to reflect 'the generic sense in which the term [was] used in the criminal codes of most States' at the time the Act was passed." *Id.* at 406 (alteration in original) (quoting

---

count four in paragraph thirty-one, involved storage trailers and would not have been charged under § 401(1)(B)(4). *See PSR* ¶¶ 30, 31. The state charged them as Class C crimes. *Id.*

Title 18 U.S.C. § 924(e)(1), the Armed Career Criminal Act, requires that a defendant have "three previous convictions" for a violent felony before the fifteen-year mandatory minimum applies. As the burglaries charged under § 401(1)(B)(4) clearly fit under the generic definition of burglary, this means that Mr. Bowers has at least two predicate dwelling burglaries under § 924(e)(1). If—as Mr. Bowers contends—his two non-dwelling (structure) burglaries should not count, he would not be subject to the fifteen-year mandatory minimum of § 924(e)(1), which is why the resolution of this issue is so important.

*Taylor*, 495 U.S. at 598). The *Stitt* Court noted that in 1986 most states defined burglary to include structures or vehicles adapted for overnight accommodation. *Id.*

Furthermore, the Court reiterated that Congress "viewed burglary as an inherently dangerous crime because burglary 'creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.'" *Id.* (quoting *Taylor*, 495 U.S. at 588). The Court went on to write that "[a]n offender who breaks into a mobile home, an RV, a camping tent, a vehicle, or another structure that is adapted for or customarily used for lodging runs a similar or greater risk of violent confrontation." *Id.*

The Supreme Court rejected the defendants' argument that if a vehicle is used for lodging only part of the time, it should not be considered a burglary because the risk of violence is less. *Id.* ("After all, a burglary is no less a burglary because it took place at a summer home during the winter, or a commercial building during a holiday").

### 2. First Circuit Caselaw After *Stitt*

In a series of judgments the First Circuit issued in January 2020—after the Supreme Court's decision in *Stitt*—on cases involving arguments that Maine burglary convictions should not be predicate offenses under the ACCA, the First Circuit cited *Dimott v. United States*, 881 F.3d 232 (1st Cir.), *cert. denied sub nom. Casey v. United States*, 138 S. Ct. 2678 (2018), and *United States v. Duquette*, 778 F.3d 314 (1st Cir. 2015), to support the holding that Maine burglary convictions qualify as predicate

offenses under the ACCA.  *See Yeaton J.* at 2; *Bender J.* at 1-2; *Black J.* at 1; *J.* at 1-2, *Platt v. United States*, No. 16-1961 (Jan. 28, 2020) (*Platt J.*).

In *Yeaton*, the magistrate judge rejected the defendant's argument that the Maine burglary statute "must be considered broader than generic burglary, in part because the definition of 'structure,' as set forth in 17-A M.R.S. § 2(24), includes vehicles and conveyances . . . ." *Recommended Decision on 28 U.S.C. § 2255 Mot.* at 9-11, *Yeaton v. United States*, No. 2:04-cr-00123-GZS (D. Me. Mar. 30, 2017), ECF No. 49, *aff'd*, *Order Affirming the Recommended Decision of the Magistrate Judge*, Yeaton, No. 2:04-cr-00123-GZS (D. Me. May 2, 2017), ECF No. 54.  On January 29, 2020, the First Circuit made short work of Mr. Yeaton's appeal.  *Yeaton J.* at 2.  Citing *Dimott* and *Duquette*, the First Circuit concluded that "the district court's disposition of [the challenge to the Maine burglary predicates] was correct."  *Id.*  The First Circuit noted it has described *Duquette* as "a 'straightforward' application of the 1990 Supreme Court decision in *Taylor* . . . ."  *Id.* (quoting *Dimott*, 881 F.3d at 241 (quoting *Duquette*, 778 F.3d at 317)).

Similarly, in *Bender*, the First Circuit discussed *Stitt* as rejecting the defendant's claim that the Maine burglary statute is overbroad and waived the "alternative reasons" the defendant raised as to why the statute is overbroad because he raised them too late.  *Bender J.* at 1-2.  The First Circuit wrote:

> Per this court's precedent, *Johnson* [*v. United States*, 576 U.S. 591, 606 (2015)] may not be used by a petitioner situated like Bender to assail his Maine burglary predicates because such predicates qualify under the ACCA enumerated-offenses clause.

*Id.* at 1 (citing *Dimott* and *Duquette*). On January 28, 2020, the First Circuit used identical language to reject Thomas Platt's appeal on the same grounds. *Platt J.* at 1-2. Finally, in *Black*, addressing a claim that Maine's burglary statute is overbroad for purposes of the ACCA enumerated-offenses clause, the First Circuit stated that "[w]ith its decision in *United States v. Stitt*, the Supreme Court seemingly has rejected any such claim." *Black J.* at 2.

The Court views these series of First Circuit decisions, all issued after *Stitt*, as strong evidence that the First Circuit does not view *Stitt* as changing the law that undergirds *Dimott* and *Duquette*.

### 3. District of Maine Caselaw After *Stitt*

District of Maine courts have weighed in on the argument that Maine's statute is broader than the generic definition on at least two occasions since *Stitt*. In *MacArthur v. United States*, 1:12-cr-00084-JAW, 2020 WL 1670369 (D. Me. Apr. 3, 2020), the Court found that "Petitioner's argument that Maine's statute is broader than the generic definition because of its treatment of moveable and temporary structures has no merit after *Stitt*." *Id.* at *7. Similarly, the Court in *United States v. Heathcote*, 2:14-cr-00091-NT, 2:16-cv-00348-NT, 2019 U.S. Dist. LEXIS 168526, 2019 WL 4783101 (D. Me. Sept. 30, 2019), held that *Stitt* does not change the fact that district judges in the First Circuit are bound by *Duquette,* and "the *Stitt* decision has only served to improve the likelihood that *Duquette* will survive." *Heathcote*, 2019 WL 4783101, at *4.

In summary, both the First Circuit and the District of Maine have concluded that *Stitt* did not change the First Circuit's prior conclusion that Maine burglary convictions qualify as predicate offenses under the ACCA. The Court analyzed *Dimott* and *Duquette* in detail in its November 6, 2018, Sentencing Order and will not re-analyze them here.

### 4. *Quarles v. United States*

Finally, in *Quarles v. United States*, 139 S. Ct. 1872 (2019), the Supreme Court reinforced its *Stitt* analysis. The *Quarles* Court rejected a defendant's claim that the term "burglary" did not include situations where a person lawfully enters a building but remains there and while inside forms the intent to commit a crime. *Id*. at 1877. The Supreme Court wrote that it "interpret[s] remaining-in burglary under [18 U.S.C.] § 924(e) to occur when the defendant forms the intent to commit a crime at any time while unlawfully present in a building *or structure*." *Id*. at 1879 (emphasis supplied).

### 5. *Farrell* and *Cook*

Mr. Bowers' arguments based on two Maine Supreme Judicial Court cases, *Farrell* and *Cook*, are unpersuasive. First, Mr. Bowers misstates the holding in *Farrell*. In his memorandum, citing *Farrell*, Mr. Bowers claims that the First Circuit has "already recognized that a statute allowing for burglary upon a finding of illegal entry into a wider array of places other than strictly a building (e.g. automobiles and vending machines) is overbroad." *Def.'s Mem.* at 2.

The *Farrell* Court recognized the Third Circuit's ruling in *United States v. Bennett*, 100 F.3d 1105, 1109 (3d Cir. 1996), that the Pennsylvania burglary statute is non-generic. *Farrell*, 672 F.3d at 30. The *Bennett* Court based its holding on the fact that the definition of "occupied structure" in the Pennsylvania statute (1) included vehicles used for business purposes, not only overnight accommodations, and (2) applied to "*any* place" adapted for carrying on business, which is not confined to structures and could include an "unlawful entry into a yard where commercial activity occurs." *Bennett*, 100 F.3d at 1109 (emphasis in original). Thus, Mr. Bowers is wrong that *Farrell* recognized as overbroad a burglary statute that included entry into places other than "strictly a building," *Def.'s Mem.* at 2. More precisely, the holding was based on the inclusion in the definition of structure of places other than the generic definition of structure, such as yards, not the inclusion of places other than buildings.

Second, Mr. Bowers is also incorrect in his analysis of *Cook*. Mr. Bowers argues that the Maine statute is overbroad because it allows for a burglary conviction when a person did not actually enter a building, only a structure. *Def.'s Mem.* at 2 ("Put another way, Maine allows for a person to be convicted of a burglary when he illegally enters a structure that is not a building . . .. This same logic allowed for a burglary conviction when a defendant stole copper piping from underneath a seasonal camp without ever entering the camp at all" (emphasis in original)). Mr. Bowers is correct that the Maine Law Court allowed a burglary conviction to stand when the defendant did not enter the building but entered only a structure. But the generic definition of

12

burglary as handed down from the United States Supreme Court includes not just a building but also a structure. *Stitt*, 139 S. Ct. at 405-06 ("an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime" (quoting *Taylor*, 495 U.S. at 598)); *Quarles*, 139 S. Ct. at 1879 ("while unlawfully present in a building or structure").

As the Government points out, *Gov't's Mem.* at 3, the Law Court in *Cook* found that the area underneath a seasonal camp was part of the structure because it was "closed or secured against the weather by skirting or lattice . . .." 2010 ME 85, ¶ 14. There is no precedent from the Supreme Court or First Circuit to support a conclusion that this interpretation of structure is broader than the general definition, and the fact that the Law Court decided *Cook* years before the First Circuit's decisions in *Dimott* and *Duquette* suggests it is not.

### 6. Storage Structure

Mr. Bowers' best argument is that the Maine statutory definition of "structure" is slightly broader than the generic definition of "structure." The Maine statutory definition is found in 17-A M.R.S. § 2(24):

> "Structure" means a building or other place designed to provide protection for persons or property against weather or intrusion, but does not include vehicles and other conveyances whose primary purpose is transportation of persons or property unless such vehicle or conveyance, or a section thereof, is also a dwelling place.

The Maine statutory definition of "structure" includes not just a place designed to provide protection for persons but captures places like storage trailers where people do not stay. The Maine Supreme Judicial Court's *Cook* opinion is consistent with this

13

part of Mr. Bowers' argument because it affirmed a conviction for burglary when the entrance was to the skirting under the building, a place where people would not stay, in order to steal cooper piping. 2010 ME 85, ¶ 14.

Mr. Bowers' argument gains some support from language in *Stitt* and other caselaw:

> An offender who breaks into a mobile home, an RV, a camping tent, a vehicle, or another structure that is adapted for or customarily used for lodging runs a similar or greater risk of violent confrontation.

*Stitt*, 139 S. Ct. at 406. A storage trailer is not "adapted for or customarily used for lodging" and therefore, Mr. Bowers' argument goes, it does not fit within the generic definition of "structure" as the Supreme Court has defined it.

There are two problems with Mr. Bowers' argument. First, Mr. Bowers pleaded guilty to four crimes of burglary as defined in Maine law and the Maine statutory definition is indivisible. *See United States v. Tsarnaev*, No. 16-6001, 2020 U.S. App. LEXIS 24226, 2020 WL 4381578, at *54 (1st Cir. Jul. 31, 2020) (defining an "indivisible statute" as "one that 'sets out a single . . . set of elements to define a single crime'" (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016))). For each of his burglaries, Mr. Bowers pleaded guilty to violating 17-A M.R.S. § 401(1)(A), which states:

> A person is guilty of burglary if . . . [t]he person enters or surreptitiously remains in a structure knowing that that person is not licensed or privileged to do so, with the intent to commit a crime therein. Violation of this paragraph is a Class C crime . . ..

The Maine burglary statute then classifies the burglary differently depending on how the defendant committed the burglary. 17-A M.R.S. § 401(1)(B)(1-5). If the person

14

committed the burglary while armed with a firearm, for example, the statute classifies the burglary as Class A.  17-A M.R.S. § 401(1)(B)(1).  If the person entered a "structure that is a dwelling place," the burglary is classified as Class B.  17-A M.R.S. § 401(1)(B)(4).  But the lead-in language for § 401(1)(B) is "The person violates paragraph A and . . .."   Thus, to be convicted of one of the enhanced classification burglaries, a person must be convicted of a § 401(1)(A) burglary.  In *Duquette*, the First Circuit wrote, "By its clear and unambiguous terms, the statute [17-A M.R.S. § 401(1)] contains all of the elements of 'generic burglary' that the Supreme Court set forth in *Taylor*."  778 F.3d at 318.  The *Duquette* Court went on:

> We find, therefore, that this statutory definition of burglary "substantially corresponds to 'generic' burglary." *Taylor*, 495 U.S. at 602 . . ..  This is fatal to Duquette's appeal: because Maine's burglary statute sets forth the definition of "generic burglary," under *Taylor*, a conviction under that statute qualifies as a "violent felony" under the ACCA.

*Id.*  As the Court's recitation of the First Circuit's recent decisions confirms, *Duquette* is still the law of the First Circuit and, as such, this Court is obligated to follow it.

Even though Mr. Bowers urges the Court to look behind his burglary convictions and review *Shepard*[2]-sanctioned court documents, such as his guilty plea colloquy, the Supreme Court has barred the Court from doing so in a so-called indivisible statute.  *See Descamps v. United States*, 570 U.S. 254, 278 (2013) ("A court may use the modified approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction").  The Court has agreed with other judges of this District who concluded that the Maine burglary

---

[2]   *Shepard v. United States*, 544 U.S. 13 (2005).

15

statute is indivisible and that the First Circuit held as much in *Duquette*. *See Heathcote*, 2019 WL 4783101, at *4; *McCurdy v. United States*, No. 1:06-cr-00080-JAW, 2017 U.S. Dist. LEXIS 1947, 2017 WL 74695, *5 (D. Me. Jan. 6, 2017); *United States v. Casey*, Nos. 2:11-cr-216-DBH, 2:16-cv-346-DBH, 2016 U.S. Dist. LEXIS 153085, 2016 WL 6581178, at *4-5 (D. Me. Nov. 3. 2016); *Collamore v. United States*, Nos. 2:16-cv-259-GZS, 2:10-cr-158-GZS, 2016 U.S. Dist. LEXIS 148757, 2016 WL 6304668, at *2 (D. Me. Oct. 27, 2016); *Dimott v. United States*, Nos. 2:06-cr-26-GZS, 2:16-cv-347-GZS, 2016 U.S. Dist. LEXIS 142354, 2016 WL 6068114, at *3-4 (D. Me. Oct. 14, 2016). In *Heathcote*, a district judge observed, "While some of my colleagues have acknowledged that *Mathis* cast[s] doubt on the viability of *Duquette, see, e.g.*, *Casey*, 2016 WL 6581178, at *5, the *Stitt* decision has only served to improve the likelihood that *Duquette* will survive." 202019 WL 4783101, at *4.[3]

A second problem is that the Supreme Court has not restricted the definition of generic burglary to structures "adapted for or customarily used for lodging . . .." *Stitt*, 139 S. Ct. at 406. In the preceding sentence, the *Stitt* Court wrote that "Congress, as [the Court] said in *Taylor*, viewed burglary as an inherently dangerous crime because burglary 'creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.'" *Id.* (quoting *Taylor*, 495 U.S. at 588). Thus, when a person comes to another's property and breaks into and steals from a storage trailer, there is an enhanced risk

---

[3]  Decided before *Stitt*, the district court's concern in *Casey* was directed to the extension of the Maine burglary statute to "camping vehicles, trailers, sleeper trains, and airplanes and boats with sleeping accommodations" and the fact that it had a "broader locational element than generic burglary." *Casey*, 2016 WL 6581178 at *5. The *Stitt* decision may have resolved the *Casey* concern.

16

that the property owner, a caretaker, or another individual will defend the property, resulting in a violent confrontation.

The overriding point, however, is what the Court wrote in its November 6, 2018, Sentencing Order:

> In *Dimott*, the First Circuit addressed appeals in the *Dimott*, *Casey*, and *Collamore* cases but did not directly reach the *Mathis* argument because of issues unique to those cases. 881 F.3d at 233-43. In dissent, Judge Torruella observed that in *Casey*, the district court concluded it was "bound by this Circuit's precedent to find that Maine burglary is generic and also falls under the enumerated clause." *Id.* at 246 (Torruella, J., dissenting). Judge Torruella wrote that "[t]he district court was correct in its ruling given its boundaries." *Id.* Judge Torruella suggested that the First Circuit itself is not "so constrained" in assessing the continued vitality of its own precedent. *Id.* The lesson from Judge Torruella's dissent in *Dimott* is that if *Duquette* is to be revisited, the First Circuit, not a district court, must do so.

*Sentencing Order* at 11 (alteration in original).

### B.   "Permissive Inference" Argument

Mr. Bowers also argues that 17-A M.R.S. § 361-A(1) makes the Maine burglary statute broader than generic burglary because it does not require a defendant to have ever in fact entered a structure. Section 361-A(1) creates a "permissible inference" that a defendant committed a burglary when the defendant is found in exclusive possession of property recently taken in a burglary. However, "[t]he First Circuit recently rejected a similar challenge, drawing a distinction between statutory permissible inferences (which do not broaden a state statute beyond the federal version) and irrebuttable presumptions (which do broaden a state statute beyond the federal version)." *MacArthur*, 2020 WL 1670369, at *7 (citing *Mohamed*, 920 F.3d at

17

104-05).  Since § 361-A(1) is a permissible inference, it does not broaden the Maine burglary statute beyond the generic burglary statute.

### C. Video Sentencing

Mr. Bowers asserts that "any continued delay of sentencing in [his] case poses a serious harm to the interests of justice" because he may be able to seek release under 18 U.S.C. § 3143(b) while he appeals his sentence and he has served close to the low end of what his guideline sentence would be if the First Circuit determines this Court is wrong about Mr. Bowers' burglary convictions being predicate offenses under the ACCA. *Def.'s Video Mot.* at 1-3.  For these reasons, he asks the Court to sentence him by video hearing as allowed by the CARES Act.  *Id.* at 1.  The Court concludes that Mr. Bowers meets the standards under the CARES Act for an immediate hearing.

At the same time, the Court observes that the District of Maine is in the process of opening its courthouse doors for sentencing hearings and it is possible, but undetermined, that it would be able to accord Mr. Bowers an in-person sentencing hearing in the near future if he wishes to wait to have one.  The Court will direct the Clerk's Office to schedule Mr. Bowers' videoconference sentencing hearing as requested.  If he has second thoughts and prefers an in-person hearing, he need only inform the Clerk's Office and his case will be scheduled for an in-person sentencing hearing as soon as possible after the District recommences such hearings.

## IV. CONCLUSION

The Court GRANTS Jonathan Bowers' Motion for Video Sentencing (ECF No. 106). The Court concludes that, despite the new caselaw and arguments, Jonathan Bowers is subject to the statutory and guideline provisions of the ACCA and United States Sentencing Guideline § 4B1.4.

SO ORDERED.

/s/ John A. Woodcock, Jr.  
JOHN A. WOODCOCK, JR.  
UNITED STATES DISTRICT JUDGE

Dated this day 21st of August, 2020