UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA    )
                                 )
        v.                  )     No. 1:16-cr-000151-JAW
                                 )
JONATHAN BOWERS           )

**ORDER ON MOTION FOR RELEASE PENDING APPEAL**

A defendant serving a one hundred eighty-month term of incarceration for possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1) moves for release pending appeal. The Court concludes that although the defendant has met his burden to show that he is not a danger or flight risk and that his appeal is not for purposes of delay, he failed to demonstrate the appeal presents a substantial question of law or fact sufficient to warrant his release and similarly failed to demonstrate exceptional reasons to justify his release. Accordingly, the Court denies the motion because the defendant fails to meet the statutory conditions for release pending appeal.

## I.    BACKGROUND

On November 16, 2020, the Court sentenced Jonathan Bowers to one hundred eighty months imprisonment, two years of supervised release, and a $100.00 special assessment. *Min. Entry* (ECF No. 118). The Court imposed this sentence following Mr. Bowers' September 14, 2017 guilty plea to one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). *Min. Entry* (ECF No. 56); *J.* at 2 (ECF No. 120). As the Court explained to Mr. Bowers and the Government at

sentencing, it would not have imposed this sentence but for the statutory mandatory minimum.

Despite reservations about the length of the sentence, the Court resolved that it was required to impose the one-hundred-and-eighty-month sentence because the statute mandated it. The Court concluded that Mr. Bowers had more than three prior convictions for a violent felony and fit within the definition of armed career criminal under U.S.S.G. § 4B1.4(b)(3)(B) and 18 U.S.C. § 924(e)(1) (ACCA). *Findings Affecting Sentencing* ¶ 3 (ECF No. 121); *Suppl. Order on Sentencing Issues and Order on Mot. for Video Hearing* at 13-17 (ECF No. 109) (*Second Sentencing Order*); *Order on Sentencing Issues* at 12 (ECF No. 91) (*First Sentencing Order*). Mr. Bowers' Guideline range for imprisonment was one hundred sixty-eight to two hundred ten months because he had a Total Offense Level of thirty and a Criminal History Category VI. *Findings Affecting Sentencing* ¶ 8. However, as an armed career criminal, the statute triggered a mandatory minimum sentence of one hundred eighty months under 18 U.S.C. § 924(e)(1). *Id.* The armed career criminal designation also affected Mr. Bowers' guideline sentence range, increasing his base offense level to 33, which was reduced to 30 because of his acceptance of responsibility, and his criminal history category, which would have been III, was increased to VI, resulting in a guideline sentence range of 180 to 210 months.[1]

---

[1]    The Court found that Mr. Bowers' guideline sentence range was 168 to 210 months; however, as the statutory mandatory minimum trumped the guideline range, the resulting guideline range was 180 to 210 months. *Findings Affecting Sentencing* ¶ 8.

Without the ACCA and U.S.S.G. § 4B1.4, Mr. Bowers would have had a Total Offense Level of nineteen and a Criminal History Category III. *First Sentencing Order* at 26. The applicable guideline range would have been thirty-seven to forty-six months, a fine between $10,000 and $100,000, and a period of supervised release between one and three years. *Id.*

On November 17, 2020, Mr. Bowers appealed his sentence to the Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 122). Two days later, he moved for release pending appeal. *Mot. for Release Pending Appeal* (ECF No. 126) (*Def.'s Mot.*). On December 10, 2020, the Government responded in opposition. *Gov't Obj. to Def.'s Mot. for Release Pending Appeal* (ECF No. 127) (*Gov't Opp'n*). Mr. Bowers replied on December 24, 2020. *Def.'s Reply to Gov't Obj. to Mot. for Release Pending Appeal* (ECF No. 129) (*Def.'s Reply*). On December 31, 2020, Mr. Bowers supplemented his filings with relevant medical records. *Winthrop Family Medicine Records* (ECF No. 134) (*Med. Records*).

## II.   THE PARTIES' POSITIONS

### A.   Jonathan Bowers' Motion

Mr. Bowers contends that he qualifies for release pending appeal pursuant to 18 U.S.C. § 3143 and *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985). *Def.'s Mot.* at 2. He states that to qualify for release pending appeal a defendant must show "(1) he is not a flight risk or danger to public safety; (2) the appeal is not for purposes of delay; and (3) the appeal 'raises a substantial question of law or fact likely to result

in [a] reversal [or] an order for a new trial.'" *Id.* (alteration in original) (quoting 18 U.S.C. § 3143(b)(1)(B)(i)-(ii); *Bayko*, 774 F.2d at 522).

First, Mr. Bowers asserts that he "is not a flight risk or danger to public safety." *Id.* He notes that he "was monitored by Pretrial Services for nearly 1 year until he appeared and pled on September 14, 2017" and during that time he "was monitored without any issues beyond taking one single trip out of state without permission" for which he "admitted wrong-doing and addressed this issue with Pretrial Services." *Id.* He further states that he has completed programs since entering custody. *Id.* He also cites his health as weighing against finding he is a flight risk or dangerous. *Id.* Mr. Bowers reminds the Court that he suffered a traumatic brain injury during the event which led to his conviction, and now walks with a cane for support. *Id.* He also argues that his "limited financial resources," as documented in the Presentence Investigation Report (PSR), and his willingness to surrender any passport "alleviates any concerns that he is a flight risk." *Id.* at 3.

Second, Mr. Bowers argues that his "appeal is not imposed for purposes of delay." *Id.* He states that he "has pursued his appeal rights regarding ACCA since nearly the inception of the charges against him." *Id.* Moreover, he states that the appeal presents an issue that the First Circuit has previously "discussed, but not decided" in *Bender v. United States*, No. 16-2602, *J.* at 2 (1st Cir. Jan. 28, 2020) and is therefore not an attempt to delay his incarceration. *Id.*

Third, Mr. Bowers asserts that his "appeal raises a substantial question of law or fact likely to result in reversal." *Id.* He acknowledges that *Bayko*, 774 F.2d 516,

4

provides the relevant test and "requires a finding that the appeal presents a close question or one that very well could be decided the other way." *Id.* (internal quotation marks omitted) (citing *Bayko*, 774 F.2d at 523). According to Mr. Bowers, "[t]his is a more rigorous standard than 'fairly debatable,' but less strict than one requiring the defendant to show that it 'is more likely than not' that the conviction would be reversed on appeal." *Id.*

Mr. Bowers frames the question presented by his appeal as being the same presented to, but not decided by, the First Circuit in *Bender*. *Id.* at 4. In contrast to *Bender*, Mr. Bowers asserts that he has "preserved his appeal rights on those grounds." *Id.* The crux of his argument is that Maine's burglary statute does not fit the definition of a generic burglary because Maine burglary extends to structures which, as defined by statute, "include[es] 'other place[s] designed to provide protection . . . for property.'" *Id.* (quoting 17-A M.R.S. § 2(24)).

To reach this conclusion, Mr. Bowers ties together several recent cases from the United States Supreme Court and First Circuit. He first notes that in *United States v. Farrell*, 672 F.3d 27, 30 (1st Cir. 2012), the First Circuit concluded that state burglary statutes which apply to places other than buildings, such as automobiles or vending machines, are not generic and therefore do not trigger the ACCA's enumerated offense enhancement. *Id.* at 4. Then, he observes that Maine's burglary statute extends to structures, which are "other place[s] designed to provide protection . . . for property." *Id.* (quoting 17-A M.R.S. § 2(24)). Mr. Bowers then contends that his own conviction shows Maine burglary is not generic because he was

5

convicted for burglarizing "mobile storage trailers that were meant to protect property of a marina and cell phone business." *Id.*

Mr. Bowers acknowledges the 2018 Supreme Court case of *United States v. Stitt*, 139 S. Ct. 399 (2018) determined "the definition [of generic burglary] to include mobile conveyances adapted for overnight accommodations." *Id.* Even so, he claims *Stitt* does not foreclose his argument. *Id.* He maintains that "burglary in Maine is broader than structure under the generic definition" even after *Stitt*, and in spite of the First Circuit's decision that Maine burglary is generic in *United States v. Duquette*, 778 F.3d 314 (1st Cir. 2015). *Id.* In support, he argues the late-Judge Torruella's dissent in *Dimott v. United States*, 881 F.3d 232, 246 (1st Cir. 2018) makes it such that *Duquette* "is plainly open to reconsideration by the First Circuit . . .." *Id.* Thus, he concludes that the doctrinal tension presented by *Farrell* and Judge Torruella's dissent in *Dimott* "make[] it very well the case that application of ACCA could—[and] for that matter should—be decided differently than it was decided in this Court's opinion, which is bound by the precedent in *Duquette*." *Id.* at 5.

As a final argument for release pending appeal, Mr. Bowers pivots to 18 U.S.C. § 3145(c), which he contends "entitle[s] [him] to release . . . on a showing of exceptional circumstances." *Id.* He writes that he "is currently incarcerated at Cumberland County Jail . . . but will be transferred to a BOP facility," where he may contract COVID-19. *Id.* at 6. He then discusses his asthma diagnosis and cites CDC guidance for the proposition that it may increase his risk of severe complications from COVID-19. *Id.* He also cites his need to walk with a cane, "which limits his mobility and

6

ability to socially distance—to the extent that is even possible in a correctional setting." *Id.*

In addition, Mr. Bowers notes that the time he has served exceeds his non-ACCA Guideline range. *Id.* He submits that before the COVID-19 pandemic began, he continued his sentencing "for purposes of awaiting the outcome of appeals before the US Supreme Court and the First Circuit Court of Appeals." *Id.* After those appeals were resolved, his sentencing was set to occur on April 28, 2020. *Id.* He observes his "sentencing never happened in April . . . due to the inability of the Court to hold in-person proceedings" and that "[i]t would be difficult to describe the circumstances in our courts and our country since March of 2020 as anything other than exceptional." *Id.* He states that if he "had been sentenced in April, then he would have immediately filed an appeal and begun that process before he was already serving a sentence in excess of his non-ACCA guidelines." *Id.*

## B.    The Government's Opposition

The Government opposes Mr. Bowers' motion, stating that he "has failed to meet his burden on any of the elements required for his requested relief." *Gov't's Opp'n* at 1. First, the Government argues that "[Mr.] Bowers is a danger to the community and a flight risk." *Id.* at 3. In support, the Government points to Mr. Bowers' criminal history which includes "an escalating series of burglaries commencing at age 18 and continuing through age 22" as well as other offenses. *Id.* The Government also discusses Mr. Bowers' offense of conviction, in which he "arm[ed] himself in fear of his quasi-employer" but "proceeded to go there and engage

in an extended altercation with the employer during which . . . Mr. Bowers touched the gun at his hip more than once." *Id.* (internal citations omitted).  The Government continues, writing that "the Court has determined that there was not a preponderance of evidence showing Mr. Bowers to be the primary aggressor . . . [n]onetheless, it does not follow that Mr. Bowers meets his burden to show, by clear and convincing evidence, that he is not a danger." *Id.* at 4.  Instead, the Government argues that Mr. Bowers' "criminal history, personal history of seeking out altercations, and ultimate escalation to carrying a firearm are all of concern." *Id.*  In addition, the Government cites Mr. Bowers' unauthorized trip out of state while on bail as suggesting he is a flight risk, and further writes that "[w]hile it is true that Mr. Bowers only had one reported trip out of state, that fact does not prove a universe of negatives." *Id.* at 5.

Second, the Government avers that Mr. Bowers' appeal "does not raise a substantial question of fact or law." *Id.*  The Government contends that Mr. Bowers' reliance on Judge Torruella's dissent in *Dimott*, and the majority opinion in *Farrell,* is misplaced. *Id.* at 6.  According to the Government,  "[Mr.] Bowers' citation to his own case simply ignores the central holding of <u>Mathis</u> and <u>Taylor</u>, by attempting to make a fact-based, rather than element-based, analysis of the underlying conviction." *Id.*  The Government continues, writing that "Maine burglary is not divisible" and therefore, "the <u>Shepard</u> documents have no application . . .." *Id.*  Moreover, the Government states that even if Mr. Bowers could rely on such documents, they do not support his claim because "the record shows only his agreement, while represented

by counsel, that his conduct fit the elements of the offense." *Id.* at 7.  Accordingly, the Government concludes that even if Mr. Bowers is correct that Maine burglary is not generic because its definition of "structure" is too broad, Mr. Bowers lacks sufficient evidence to show that his prior burglary convictions fell outside the generic definition. *Id.* at 7.

Regarding *Bender*, the Government characterizes Mr. Bowers' reliance on the case's procedural posture as "misplaced." *Id.* It states that "it would be more accurate to say that these arguments were not addressed by the circuit court" and that "[t]he First Circuit made no indication that Bender's 'alternative reasons' had any merit or were otherwise open questions in this Circuit." *Id.* The Government also points out *Bender* reaffirmed that Maine burglary convictions are "qualifying predicates under the ACCA enumerated offense clause. *Id.*

Shifting to Mr. Bowers' argument that exceptional reasons justify release, the Government argues that he fails to show such reasons. *Id.* at 8. Citing *United States v. Garcia*, 340 F.3d 1013, 1019-21 (9th Cir. 2003) and *United States v. Farlow*, 824 F. Supp. 2d. 189, 196 (D. Me. 2011), the Government states that there is a "non-exhaustive list of factors" for the Court to consider in undertaking this analysis. *Id.* The Government contends that none of these factors supports releasing Mr. Bowers. *Id.*

The Government also disputes Mr. Bowers' conclusion that the COVID-19 pandemic and his asthma present an exceptional reason for release pending appeal. *Id.* at 10-11.  The Government notes that the "circumstances are not exceptional"

9

because "this pandemic affects every federal prisoner, if not every American . . .." *Id.* at 11.  Moreover, the Government questions whether Mr. Bowers has asthma, stating that a "search of the revised PSR found only his wife's unverified assertion" to support an asthma diagnosis.  *Id.*  Lastly, the Government contends that the BOP's response to the COVID-19 pandemic can adequately protect him from the dangers presented by the virus.  *Id.* at 11-15.

C.   **Jonathan Bowers' Reply**

Mr. Bowers begins his reply by taking issue with the Government's argument that he is a danger to the community.  He asserts that "[t]he Government continues to argue the facts of what happened in April 2016 despite the findings of this Court after an evidentiary hearing where the Government's alleged victim, Justin Taylor, testified and was deemed not credible." *Def.'s Reply* at 1.  Mr. Bowers then reiterates his belief that his prior burglary convictions "are not evidence that he is a danger to the public so many years later."  *Id.*  He also notes that his trip out of state while on bail does not show he is a danger to the community because he "was not revoked for this trip and returned and reported the facts of it to his pretrial officer and the Government through his then attorney." *Id.* at 2.

As to whether he raised a substantial question of law, Mr. Bowers contends that, contrary to the Government's assertion, he "has not even raised . . . a fact-based inquiry into the specific elements of his own convictions and vehicles adapted for overnight accommodations." *Id.*  Rather, he states that his argument on appeal is a point "that *Duquette* fails to address—because the parties did not raise—the portion

10

of the Maine statute relevant to [Mr. Bowers'] appeal . . . ."  *Id.*  He also argues that "*Stitt* is a red herring" because his burglaries did not involve "vehicles adapted for overnight accommodations."  *Id.* at 2-3.

Regarding *Stitt*, Mr. Bowers contends that "[t]he First Circuit's refusal to address Bender's argument does not go on to state that even if his claims were not procedurally barred, then they would be denied under *United States v. Stitt*."  *Id.* at 3. Therefore, he maintains that stating *Stitt* foreclosed all arguments that Maine burglary is non-generic "places more weight on *Stitt* tha[n] it can bear."  *Id.*  Mr. Bowers asserts that the First Circuit did not reach this conclusion in *Bender* and that "*Stitt* does not address 17-A M.R.S. § 2(24), which includes far more than vehicles adapted for overnight accommodations in its definition of structure."  *Id.*

Mr. Bowers then again responds to the Government's contention that he wants a fact-based inquiry, clarifying that he does not demand one.  *Id.*  Further, he "does not agree . . . that his Rule 11 plea colloquy merely proves his guilt for his predicate conviction . . . [i]nstead that plea colloquy proves that Maine trial courts . . . considered 'structure' to include mobile storage trailers for purposes of Maine's burglary statute."  *Id.*

Finally, Mr. Bowers grapples with the Government's contention that he has not demonstrated exceptional reasons for his release.  *Id.* at 3.  He first notes that under *Farlow*, the First Circuit does not use a list of factors to determine whether exceptional reasons are present.   *Id.* at 3-4   Therefore, he contends that the Government's reliance on *Garcia* is misplaced.  *Id.* at 4.  Mr. Bowers takes issue with

11

the Government's application of the *Garcia* factors, noting that although the Government argues "[Mr.] Bowers's status as an ACCA defendant makes him a dangerous recidivist . . . [t]he facts of Bowers['] case and central reason for his appeal . . . tell a different story." *Id.* He notes that all but one of his burglary convictions arose from burgling an unoccupied storage trailer or abandoned home, and all these convictions occurred between the ages of eighteen and twenty-two. *Id.*

Mr. Bowers also rejects the Government's argument that his life "was not, in many respects, exemplary" as "a value judgment made relative to some person who has not lived [Mr.] Bowers's life." *Id.* He notes that he had a difficult childhood, "including physical abuse and neglect, as well as sexual abuse . . .." *Id.* He states that he "persevered through these childhood difficulties raising his two children successfully, volunteering his time at a local church, and helping members of his community who were in need." *Id.*

Mr. Bowers argues that he does, in fact, have asthma. *Id.* He states that the Government's objection to the information about his asthma occurred "despite [the Government's] failing to lodge any objection to that portion of the PSR when it was possible to do so." *Id.* He states he intends to file medical records showing an asthma diagnosis once he received them. *Id.* at 4 n..4. Mr. Bowers filed these medical records, and they show an asthma diagnosis as of June 6, 2017. *Med. Record* at 2.

Finally, Mr. Bowers contends that "the COVID-19 numbers within BOP's facilities speak for themselves." *Id.* at 5. He stresses that there is a difference between having policies and ensuring that they are implemented effectively and then

12

cites BOP data showing outbreaks at several correctional institutions across the United States. *Id.* He therefore concludes that "[a] real and extraordinary danger exists for every inmate held in jails and prisons across the country." *Id.*

## III.   DISCUSSION

The Court concludes Mr. Bowers does not satisfy the statutory requirements to be released during the pendency of his appeal. After explaining the relevant legal standard, the Court considers Mr. Bowers' motion. The Court denies the motion because Mr. Bowers has failed to show (1) that his appeal presents a "substantial question of law or fact" likely to result in a reduced sentence of imprisonment and (2) that there are exceptional reasons why his detention would not be appropriate.

### A.   Statutory Provisions for Release Pending Appeal

The statute most obviously directed to the release of a defendant pending appeal, 18 U.S.C. § 3143(b) is denominated, "**Release or detention pending appeal by the defendant**." Subsection (b)(1) provides:

**(1)** Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

**(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

**(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

    **(i)** reversal,
    **(ii)** an order for a new trial,
    **(iii)** a sentence that does not include a term of imprisonment, or

**(iv)** a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

Unfortunately for Mr. Bowers, this section does not apply to him on its face, because of its introductory phrase: "Except as provided in paragraph (2)."

Paragraph 2 provides:

**(2)** The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained.

18 U.S.C. § 3143(b)(2).  Subsection (f)(1) lists several categories of crimes, including "an offense for which the maximum sentence is life imprisonment or death."  18 U.S.C. § 3142(f)(1)(B).  For a defendant subject to the ACCA, the possession of a firearm by a prohibited person has a potential maximum penalty of life imprisonment.  *See* 18 U.S.C. §§ 922(g)(1), 924(e)(1); *PSR* ¶ 62.  This means that under subsection 2, the Court may not release Mr. Bower pending appeal regardless whether he meets the criteria in § 3143(b)(1).

But federal law is rarely so simple.  Another provision, 18 U.S.C. § 3145(c), could allow Mr. Bowers' release despite the prohibition of § 3143(b)(2).  Section 3145(c) reads:

14

> **(c) Appeal from a release or detention order.** An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a) (2) or (b) (2), and who meets the conditions of release set forth in section 3143(a) (1) or (b) (1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

This statute expressly addresses persons, like Mr. Bowers, who are "subject to mandatory detention under 18 U.S.C. § 3143(b)(2)." *See United States v. Weiner*, No. 92-1708, 1992 U.S. App. LEXIS 28794, at *2 (1st Cir. Jul. 31, 1992) (unpublished).

This subsection revives the criteria in 18 U.S.C. § 3143(b)(1) and allows the Court to release him if he meets all the conditions of release in § 3142(b)(1) and also "clearly show[s] that there are exceptional reasons why such person's detention would not be appropriate." Excluded under § 3143(b)(2), the criteria in § 3143(b)(1) become relevant considerations under § 3145(c). The Court therefore turns to whether Mr. Bowers meets the criteria for release pending appeal under § 3142(b)(1).

To summarize, Mr. Bowers needs first to show three things to justify his release pending appeal: (1) he is not likely to flee and he is not likely to pose a danger to the safety of any other person or the community; (2) his appeal is not for the purpose of delay; and (3) that the appeal raises a substantial question of law or fact likely to result in a reversal, new trial, non-incarcerative sentence, or a sentence of incarceration shorter than he has already served. *United States v. Farlow*, 824 F. Supp. 2d 189, 193 (D. Me. 2011). These three factors are the § 3143(b)(1) requirements. 18 U.S.C. § 3143(b)(1). If Mr. Bowers satisfies these three elements,

he must then clear the added hurdle of § 3145(c), which permits his release pending appeal upon a clear showing of "exceptional reasons."  18 U.S.C. § 3145(c).  *See United States v. O'Neal*, No. 1:18-cr-00020-JDL, 2020 U.S. Dist. LEXIS 75291, at *2 (D. Me. Apr. 29, 2020) (describing the analysis as a four-factor inquiry).  The burden to demonstrate release is proper rests with Mr. Bowers.  *United States v. Bayko*, 774 F.2d 516, 520 (1st Cir. 1985).

The Court reviewed the parties' submissions, the record, and the relevant caselaw and concludes it Mr. Bowers has not demonstrated that he fits within the statutory requirements for release while his appeal is pending.  The Court concludes that Mr. Bowers has met his burden on the first two elements but failed to show his appeal presents a substantial question or that exceptional reasons merit his release.

At Mr. Bowers' sentencing, the Court explained that because he had at least three prior convictions for burglary under Maine law, the Court concluded that it had no choice but to sentence him to at least one hundred eighty months—fifteen years— in prison for possessing a firearm.  However, the Court also expressed its belief, that if the 180-month sentence were not mandatory, the Court would not have imposed such a lengthy sentence, given its assessment of Mr. Bowers' history and characteristics, the nature and circumstances of his offense, and the other sentencing factors under 18 U.S.C. § 3553(a).  Put another way, if the First Circuit determines that the fifteen-year mandatory minimum does not apply to Mr. Bowers' crime and remands Mr. Bowers' case back to this Court for resentencing, the Court will without hesitation resentence him to a substantially lower sentence.

Unfortunately for Mr. Bowers, the Court's comments at his sentencing hearing do not mean that he has raised a substantial question on appeal or that his case fits within the exception that allows a sentencing court to release a defendant pending appeal. The Court turns to those issues.

### B.    Risk of Flight and Danger to the Community

Turning first to whether Mr. Bowers presents a risk of flight or "danger to the safety of any other person in the community," the Court concludes he does not. In its opposition to his release, the Government reiterates its skeptical view of Mr. Bowers, the same arguments the AUSA pressed at Mr. Bowers' sentencing hearing. *Gov't's Opp'n* at 3-5. The Court takes a markedly different view of Mr. Bowers and it expressed its view at the sentencing hearing as well. In the Court's view, Mr. Bowers represents neither a risk of flight nor a danger to the community and would qualify for release pending appeal if he met the other statutory criteria.

To explain, the Court acknowledges that the Government properly pointed to Mr. Bowers' one unauthorized trip out of state while on bail before his guilty plea as well as his criminal history, which includes four burglary offenses and several other convictions. *See PSR* ¶¶ 4, 30-36. Despite these facts, the Court is not persuaded Mr. Bowers is a flight risk or dangerous. Mr. Bowers only had one violation of his conditions of release and the PO described him as "generally compliant." *PSR* ¶ 4. Also, at his sentencing hearing on November 16, 2020, numerous family members, including his wife and children, and supporters were present and spoke on his behalf, and they reflect his substantial ties to Maine, which he would have to sever if he fled.

The Court has taken a measure of Mr. Bowers and, despite his criminal history, it is convinced that if released, he will not flee and will abide by the conditions of release.

As for his burglary convictions, the Court notes that three of his offenses occurred in quick succession in 2006 when Mr. Bowers was eighteen years of age and the fourth occurred in 2010. Aside from his 2016 federal offense, which was for unlawful possession of a firearm, Mr. Bowers has had no criminal convictions since 2010. The Court views the amount of time between his prior burglary convictions and the present day as sufficiently mitigating any concerns stemming from Mr. Bowers' criminal history.

Turning to the circumstances of his latest offense, the Court has a very different opinion than the AUSA as to who was the aggressor and about the general circumstances of the offense. The Court agrees with the Government that Mr. Bowers should not have possessed a firearm. But it does not see the rest of the underlying facts the way the AUSA sees them. The Court views Justin Taylor, not Mr. Bowers, as the aggressor in the assault at the Taylor garage on April 6, 2016 and, even though Mr. Bowers possessed a firearm and momentarily touched the firearm a couple of times as Mr. Taylor became more and more aggressive, the Court is not convinced that Mr. Bowers ever drew the firearm during the altercation. Instead, despite having a firearm that likely would have thwarted Mr. Taylor's wrench attack, Mr. Bowers did not pull it out. Rather, he took a bad beating at the hands of Mr. Taylor, resulting in significant personal injuries.

The Court also considered Mr. Bowers' health.  The Court views this factor as favoring a finding that he is neither a flight risk nor dangerous.  As a result of the altercation giving rise to his ACCA conviction, Mr. Bowers suffered a traumatic brain injury—a concussion—though a CT scan revealed no evidence of a skull fracture or intracranial bleeding.  *PSR* ¶ 49.  He continues to report physical complications from his assault including hearing loss for which he uses hearing aids, migraine headaches, vertigo spells with falling, a recent potential seizure, and concentration and memory issues.  *Id.* ¶¶ 49-50.  The Court views these neurological impairments as weighing against finding Mr. Bowers is a flight risk or a danger to the community.

Finally, the Court has considered Mr. Bowers' relative poverty, his family, and the ongoing COVID-19 pandemic.  Mr. Bowers is a father of two and a husband of one.  *PSR* ¶ 46.  Both of his children are young, and his wife is disabled as a result of a traumatic brain injury.  *Id.*  It appears the Bowers family relies substantially on government programs to make ends meet.  *Id.* ¶ 61.  Mr. Bowers' connection to his family and their limited financial resources support a finding that he is not a flight risk.

On balance, the Court concludes Mr. Bowers has shown by clear and convincing evidence he is not a flight risk or a danger to the community.

**C.    Delay**

The Court concludes Mr. Bowers is not appealing this Court's application of the ACCA for purposes of delay.  Throughout his prosecution, and as early as September 2018, Mr. Bowers has maintained that First Circuit precedent on the

19

ACCA does not directly speak to whether his convictions qualify as ACCA predicate offenses.  It has always been the Court's understanding that Mr. Bowers raised those arguments in good faith.  *See Mem. in Aid of Sentencing* at 4-9 (ECF No. 86); *First Sentencing Order* at 7-11; *Second Sentencing Order* at 5-6.

### D.    Substantial Question Likely to Result in Reversal

The dispositive issue for Mr. Bowers' motion for release pending appeal is whether his appeal "raises a substantial question of law or fact likely to result in" a reversal, new trial, non-incarcerative sentence, or a reduction of his sentence to less time in prison than he has already served.   18 U.S.C. § 3143(b)(1).   The Court concludes it does not.

### 1.    Legal Standard

According to the First Circuit, the substantial question prong requires a trial court to consider two factors: substantiality and prejudice.  *See United States v. Zimny*, 857 F.3d 97, 99 (1st Cir. 2017) (citing *Bayko*, 774 F.2d at 522).  First, a court must consider whether the question on appeal is "substantial."  *Id.*  Essentially, this prong considers whether the issue the defendant raises on appeal is a close question, that is, one the appellate court could reasonably decide differently than the district court.  *See id.* at 99-100  ("In *Bayko*, we decided that a substantial question means a close question or one that very well could be decided the other way") (quoting *Bayko*, 774 F.2d at 523) (internal quotation marks omitted).

The second factor is prejudice.  *Id.* at 99.  The First Circuit refers to this as "the likelihood prong."  *Id.*  Under *Bayko*, "analysis of the likelihood prong proceeds

on the assumption that the substantial question of law or fact 'is determined favorably to defendant on appeal.'"  *Id.* at 100 (quoting *Bayko*, 774 F.2d at 522).  Thus, the relevant question is whether Mr. Bowers' conviction will be reversed, or his term of incarceration will be less than the time he has already served if the First Circuit rules in Mr. Bowers' favor.  *Id.* at 100-01; 18 U.S.C. § 3143(b)(1).

### 2.    The Substantial Question Prong

With respect to substantiality, the Court concludes Mr. Bowers' appeal does not raise a substantial question of law.  The Court twice addressed whether the Maine burglary statute is generic under the ACCA.  *First Sentencing Order* at 7-11; *Second Sentencing Order* at 6-17.  Both times, the Court rejected Mr. Bowers' argument, most recently on August 21, 2020.  *Second Sentencing Order* at 6-17.  The Court incorporates its earlier analysis of this issue in the two sentencing orders.

The Court observes that for purposes of determining whether Mr. Bowers has raised a substantial question, the test is slightly different than the way these issues were presented in the Court's prior rulings.  This is because this Court earlier addressed whether First Circuit precedent required the Court to apply the ACCA.  As an inferior court within the First Circuit, this Court owes strict allegiance to the decisions of the United States Supreme Court and the Court of Appeals for the First Circuit and the only question was whether, in this case, the First Circuit had issued authoritative opinions on the issues before this Court.  Once the Court concluded it had done so, it was bound to apply them, and its earlier decisions ended with its

21

conclusion that the First Circuit had issued definitive and binding decisions on this issue.

Here the question is slightly different: whether Mr. Bowers would raise a substantial question on appeal. This requires a trial court's prediction as to whether its governing appellate court would assess a legal question as substantial. In *Bayko*, the First Circuit pointed out that the literal language of § 3143(b)(1)(B)(iv) would present a classic "Catch 22," as the district court would be required to conclude its own ruling is likely to be reversed. 774 F.2d at 521-22. "[I]f the court had concluded it was likely making the wrong decision, it would have made the right one." *United States v. Tyler*, 324 F. Supp. 2d 69, 70 (D. Me. 2004).

To make this assessment, the Court begins with the precept that the doctrine of stare decisis applies within the First Circuit itself, a concept known as horizontal stare decisis. *United States v. Moore-Bush*, 963 F.3d 29, 36-38 (1st Cir. 2020), *vacated*, *reh'g en banc granted*, 982 F.3d 50 (1st Cir. 2020). As the *Moore-Bush* Court noted, "[t]he law of the circuit doctrine protects horizontal precedent, or precedent from the same court, meaning that generally 'a prior panel decision shall not be disturbed.'" *Id.* at 37 (quoting *United States v. Lewko*, 269 F.3d 64, 66 (1st Cir. 2001)). Even so, "a panel of the court of appeals has some flexibility, modest though it may be, with respect to its own precedents." *Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004). With these principles in mind, the Court will expand upon its prior decisions on the ACCA issue, which were cabined by vertical stare decisis to

assess whether the ACCA issue would raise a substantial question at the Court of Appeals level.

The Court's conclusion is that the legal question Mr. Bowers raises is not a close one, but its conclusion requires a somewhat lengthy explanation.

### a.   Legal Primer: *Duquette*, *Mathis*, *Dimott*, and *Stitt*

For purposes of this motion, a single case citation, *United States v. Duquette*, 778 F.3d 314 (1st Cir. 2015), renders insubstantial the question presented by Mr. Bowers' appeal.  In *Duquette*, the First Circuit considered "whether [a defendant's] past burglary convictions under Maine law qualify as violent felonies defined by the ACCA . . . ." *Id.* at 317.  To determine whether Maine's burglary statute was an ACCA violent felony, the First Circuit followed the United States Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575 (1990).  The *Taylor* Court held generic burglary is a violent felony under the ACCA and defined generic burglary as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599.

Analyzing *Taylor*, the First Circuit opined in *Duquette* "[n]owhere does *Taylor* indicate (or even imply) that whether the burgled structure is a dwelling has anything to do with determining whether the guilty individual committed a 'generic burglary.'" *Duquette*, 778 F.3d at 317.  Applying *Taylor* to the Maine burglary statute, the *Duquette* Court held "[b]y its clear and unambiguous terms, the statute contains all

of the elements of 'generic burglary' that the Supreme Court set forth in *Taylor*."[2]  *Id.* at 318.  The *Duquette* Court went on to "find . . . that this statutory definition of burglary 'substantially corresponds to generic burglary'" and concluded that "because Maine's burglary statute sets forth the definition of 'generic burglary,' under *Taylor*, a conviction under that statute qualifies as a 'violent felony' under the ACCA."  *Id.*

Thus, as of 2015, the law in the First Circuit was clear: Maine burglary convictions are generic burglaries under the ACCA's enumerated predicate offense clause.  Under *United States v. Chhien*, 266 F.3d 1 (1st Cir. 2001), prior First Circuit decisions are "inviolate, absent either the occurrence of a controlling intervening event (*e.g.*, a Supreme Court opinion on the point; a ruling of the circuit, sitting en banc; or a statutory overruling) or, in extremely rare circumstances, where non-controlling but persuasive case law suggests such a course."  *Id.* at 11.  As such, the issue becomes whether subsequent developments in the caselaw have eroded *Duquette* to the point where Mr. Bowers' appeal presents a close question.

A year after *Duquette*, the United States Supreme Court decided *United States v. Mathis*, 136 S. Ct. 2243 (2016).  *Mathis* held that Iowa's burglary statute was non-generic under the ACCA because it extended to vehicle burglaries and was therefore broader than the generic definition of burglary.  *Id.* at 2251.  Two years after *Mathis*, the First Circuit decided *Dimott v. United States*, 881 F.3d 232 (1st Cir. 2018), which

---

[2]     Mr. Bowers is correct that the defendant in *Duquette* conceded Maine burglary was generic burglary.  *Def.'s Reply* at 2 n.2; *Duquette*, 778 F.3d at 318.  However, the Court does not view this as undercutting *Duquette*'s precedential value.  The *Duquette* Court independently performed a *Taylor* analysis and determined Maine burglary was generic, despite that defendant's concession.  *Duquette*, 778 F.3d at 318.  He is, however, correct that *Duquette* did not interpret whether Maine's definition of structure under 17-A M.R.S. § 2(24) substantially corresponds with the definition of generic burglary.  Even so, the Court is unconvinced this omission calls *Duquette* into question.

partly considered *Duquette*'s continued validity post-*Mathis* in a consolidated appeal of three habeas petitions. *Id.* at 233-34. There, the First Circuit rejected two of the habeas petitioners' claims that Maine burglary is non-generic under *Mathis* as barred because the "*Mathis* did not announce a new, retroactively applicable rule." *Id.* at 237 (citing *Mathis*, 136 S. Ct. at 2257). As for the third habeas petitioner, in considering whether he was sentenced under the ACCA's residual clause or the enumerated clause, referencing *Duquette*, the First Circuit noted that "the opinion describes its holding as a 'straightforward' application of the 1990 Supreme Court decision in *Taylor v. United States*, 495 U.S. 575 (1990)." *Id.* at 241.

In partial dissent, Judge Torruella concluded "*Mathis* is subsequent controlling authority which calls into question the vitality of our opinion in *Duquette*." *Id.* at 246 (citing *United States v. Whindleton*, 797 F.3d 105, 113 (1st Cir. 2015)). He further asserted that "*Mathis* has undermined" the First Circuit's prior analysis in *Duquette* and therefore requires the First Circuit "to determine if one (or more) of the elements of Maine burglary is broader than the corresponding element of the generic offense." *Id.*

On December 10, 2018, the Supreme Court decided *United States v. Stitt*, 139 S. Ct. 399 (2018). *Stitt* considered whether burglary statutes from Tennessee and Arkansas, where burglary includes entry into vehicles or structures adapted for or customarily used for overnight accommodation, are generic under the ACCA. *Id.* at 403-04. The Court concluded those statutes were generic. *Id.* at 404. In reaching this conclusion the Supreme Court reasoned that it "made clear in *Taylor* that

Congress intended the definition of 'burglary' to reflect 'the generic sense in which the term [was] used in the criminal codes of most States' at the time the [ACCA] was passed." *Id.* at 406.  Moreover, at that time "a majority of state burglary statutes covered vehicles adapted or customarily used for lodging—either explicitly or by defining 'building' or 'structure' to include those vehicles." *Id.*

The *Stitt* Court distinguished *Mathis*, noting that "the question [in *Mathis*] was whether federal generic 'burglary' includes within its scope a burglary statute that lists multiple, alternative means of satisfying one element, some of which fall within *Taylor*'s generic definition and some of which fall outside it.  We held, in light of the parties' agreement that the Iowa statute covered some 'outside' behavior . . . that the statute did not count as a generic burglary statute." *Id.* at 407.  The *Stitt* Court continued, noting that "the Court in *Mathis* did not decide the question now before [it]—that is, whether coverage of vehicles designed or adapted for overnight use takes the statute outside the generic burglary definition." *Id.*

As the Court discussed in its second sentencing order, the First Circuit has continued to apply *Duquette* after *Mathis* and *Stitt,* describing it "as a straightforward application of the 1990 Supreme Court decision in *Taylor* . . .." *Second Sentencing Order* at 8-10 (citing *J.*, *Yeaton v. United States*, No. 17-1452 (1st Cir. Jan. 29, 2020)) (internal quotation marks omitted).  The First Circuit has rejected other appeals by similarly situated defendants on the same grounds, relying on *Duquette*'s conclusion that Maine burglary is generic under the ACCA.  *Id.* at 9-10 (*Black v. United States*, No. 18-1311 (1st Cir. Jan. 28, 2020); *United States v. Bender*, No. 16-2062 (1st Cir.

Jan. 28, 2020); *Platt v. United States*, No. 16-1961 (1st Cir. Jan. 28, 2020) (denial of a second or successive 28 U.S.C. § 2255 motion); *Yeaton*, *supra*.

### b. *Duquette* Remains Good Law

After surveying the caselaw for a third time, the Court remains confident that *Duquette* lives on. The Court is unpersuaded that Judge Torruella's *Mathis*-based dissent in *Dimott*, written before *Stitt*, calls *Duquette* into question. Furthermore, in the Court's view, neither the pre-*Mathis* caselaw, *Mathis* itself, nor post-*Mathis* caselaw supports overturning *Duquette*.

Importantly, *Mathis* did not depart from prior ACCA caselaw sufficient to displace *Duquette,* at least as it relates to whether Maine burglary is generic.[3] As the *Mathis* Court wrote, "[o]ur precedents make this a straightforward case." *Mathis*, 136 S. Ct. at 2257. *Mathis* did not break new ground by concluding automobiles are not structures within the meaning of generic burglary. *See id.* at 2250 (citing *Taylor*, 495 U.S. at 598, for the premise that Iowa's burglary statute was non-generic because vehicles are not structures); *see also Dimott*, 881 F.3d at 237 (concluding, in the habeas context, that *Mathis* did not announce a new rule retroactive on collateral review). Before *Mathis*, the Supreme Court had reached the same conclusion more than twenty-five years earlier in *Taylor* and subsequently applied it in *Shepard v. United States*, 544 U.S. 13 (2005). *See Taylor*, 495 U.S. at 599 (describing state burglary statutes encompassing "automobiles and vending machines" as broader than the generic definition); *accord Shepard*, 544 U.S. at 17 (describing

---

[3]      It is the Court's understanding that Mr. Bowers' appeal does not argue *Mathis* obviated *Duquette*'s implicit conclusion that Maine's burglary statute is divisible.

Massachusetts' burglary statute as non-generic under *Taylor* because the statute criminalized unlawful entries into boats and cars). Thus, nothing in *Mathis* altered the legal framework the First Circuit employed in *Duquette*.

*Stitt* further parries the thrust of Mr. Bowers' *Mathis*-based arguments. As the Supreme Court explained in *Stitt*, *Mathis* considered whether a statute that listed multiple ways to satisfy one element was generic ACCA burglary when some of the ways to meet that element were broader than generic burglary. *See Stitt*, 139 S. Ct. at 407 (discussing *Mathis*). *Mathis* determined that such a statute was not generic, because vehicles are not structures, and therefore Iowa's burglary statute was broader than generic ACCA burglary. *Mathis*, 136 S. Ct. 2250-51. *Stitt* somewhat qualified this conclusion, clarifying that generic ACCA burglary includes burglaries of vehicles customarily used or equipped for overnight accommodation. *Stitt*, 139 S. Ct. at 404.

In reaching its conclusion, *Stitt* reiterated that *Taylor* extends generic burglary to "a building or other structure." *Id* at 405 (quoting *Taylor*, 495 U.S. at 598). Therefore, the scope of places that may be burgled is not confined to places where people may be sleeping or present. *Id.* at 406 ("[A] burglary is no less a burglary because it took place at a summer home during the winter, or a commercial building during a holiday"). Moreover, *Stitt* reaffirmed *Taylor* as the operative test to determine whether a burglary statute is generic and instructs Courts to consider whether the generic state burglary statutes at the time of the ACCA's passage

criminalized entry into a particular place.  *See id.* (applying *Taylor* and surveying state burglary statutes at the time of the ACCA's passage).

In short, *Stitt* reveals *Mathis* did not redefine how a court should determine the meaning of "structure" for purposes of ACCA generic burglary.  Thus, to the extent Mr. Bowers' argues on appeal that *Mathis* requires a court to determine whether the burgled entity is a "structure" through judicial interpretation, he is mistaken.  *Taylor* and *Stitt* make manifest that the operative question is largely a matter of history.  It asks whether the generic state burglary statute at the time of the ACCA's passage extended to the particular burgled object.  In other words, *Stitt* makes clear that *Mathis* does not require courts to determine the meaning of "structure" through judicial gloss.

*Stitt* contains one more lesson.  Perhaps most damaging to Mr. Bowers' argument that *Mathis* renders Maine burglary non-generic is that *Stitt* listed Maine's burglary statute as of 1983 in an appendix as an example of a generic burglary statute that included vehicles equipped for overnight accommodation.  *Id.* at 408 (appendix).  In 1983, 17-A M.R.S. § 401(1) provided: "A person is guilty of burglary if he enters or surreptitiously remains in a structure, knowing that he is not licensed or privileged to do so, with the intent to commit a crime therein."  *See State v. Vachon*, 482 A.2d 864, 866 n.1 (Me. 1983) (quoting 17-A M.R.S. § 401(1) (1983)).  Despite minor amendments, Maine's burglary statute is substantially the same now as it was in 1983.  *See* 17-A M.R.S. § 401(1) (2021) ("A person is guilty of burglary if . . . [t]he person enters or surreptitiously remains in a structure knowing that that person is

not licensed or privileged to do so, with the intent to commit a crime therein"). The definition of "structure" in the Maine Criminal Code has been the same since 1977. *See* 17-A M.R.S. § 2(24) (last amended in 1977). Mr. Bowers provides no explanation for why the Court should disregard the Supreme Court's strong intimation that Maine burglary was, and now is, generic.

Summing up, given the language of Maine's burglary statute and the Supreme Court's decision in *Stitt*, *Mathis* cannot be read to render Maine's burglary statute non-generic. To meet the § 3143(b)(1)(B) "substantial question" standard, Mr. Bowers must show that his appeal raises "a 'close' question or one that very well could be decided the other way." *Zimny*, 857 F.3d at 99-100. The Court does not regard Mr. Bowers' appellate issue as "close" within this definition. Moreover, neither *Mathis* nor *Stitt* overruled the generic burglary test from *Taylor* and replaced it with a different legal standard.

This brings Mr. Bowers back to *Duquette*. In effect, he argues that the First Circuit could reasonably reach a different decision now than it did six years ago in *Duquette*, despite analyzing the same Maine burglary statute under the same legal test, with no material intervening developments in the caselaw. Despite its reservations about the length of the sentence it imposed on Mr. Bowers, the Court cannot stretch his contentions into a close legal question on appeal as the law defines it. Because 18 U.S.C. § 3145(c) requires a defendant first to show that he "meets the conditions of release set forth in . . . section 3143(b)(1)," and Mr. Bowers had not

raised a "substantial question," he has likewise failed to meet the standards for release under § 3145(c).

### 3. The Likelihood Prong

Mr. Bowers satisfies the likelihood prong; however, the Court cannot release him because he fails the substantiality prong. Without the ACCA enhancement, the fifteen-year mandatory minimum would not apply to Mr. Bowers and his sentencing guideline range would fall to thirty-seven to forty-six months, a fine between $10,000 and $100,000, and a period of supervised release between one and three years. *First Sentencing Order* at 26. As Mr. Bowers has been in custody since September 14, 2017, he has currently been incarcerated for approximately forty-two months. If the First Circuit were to vacate the Court's application of the ACCA, the Court would have likely imposed a guideline sentence or less. Thus, Mr. Bowers satisfies 18 U.S.C. § 3143(b)(1)(B)(iv) because overturning the ACCA's applicability would lead to "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process . . .." 18 U.S.C. § 3142(b)(1)(B)(iv).

### E. Exceptional Reasons

Finally, the Court turns to whether Mr. Bowers has shown "exceptional reasons" weigh against his continued detention. As the Court noted in *Farlow*, "[w]hat constitutes 'exceptional reasons' is unclear." 824 F. Supp. 2d at 196 (citing *Weiner*, 1992 U.S. App. LEXIS 28794, at *8-9). "[T]he First Circuit has said that there must be present a unique combination of circumstances giving rise to situations

that are out of the ordinary." *Id.* (citing *Weiner*, 1992 U.S. App. LEXIS 28794, at *8) (internal quotation marks omitted). The district court has wide discretion when considering whether exceptional reasons exist. *Id.* In the past, the Court has applied the useful non-exhaustive list of eight factors that the Ninth Circuit established in *United States v. Garcia*, 340 F.3d 1013, 1019-21 (9th Cir. 2003) when confronted with similar motions for release pending appeal. *See Farlow*, 824 F. Supp. 2d at 196 (applying *Garcia*).

Mr. Bowers' current claim of exceptional reasons rests predominantly on the fifth *Garcia* factor, "[w]hether prison would impose unusual hardships on a defendant due to serious illness or injury." *Id.* (citing *Garcia*, 340 F.3d at 1019). He has asthma and contends the ongoing COVID-19 pandemic presents a serious medical risk to him while incarcerated. *Def.'s Mot.* at 5-7; *Med. Record* at 2. Moreover, Mr. Bowers argues that his prior burglary convictions are not reflective of a "prototypical Armed Career Criminal" but rather "occurred when he was 18 or 22 years old, which is the height of impetuous decision making and risk taking in young adults . . .." *Def.'s Reply* at 4.

The Court is unconvinced. Turning first to Mr. Bowers' asthma and COVID-19, according to the Centers for Disease Control and Prevention (CDC), several factors increase a person's risk of severe illness from COVID-19. Arguably, the most decisive factor is a person's age. *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Apr. 2, 2021). Generally, the risk of COVID-19 increases as a person ages, with over eighty percent of deaths occurring in people who are sixty-

five or older and more than ninety-five percent occur in people older than forty-five. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 2, 2021) (*CDC COVID Med. Conditions*).  Even so, people younger than forty-five may still face a high risk of complications.  *Id.*  As Mr. Bowers is in his thirties, he does not fit within the age-related risk category.

Regardless of age, people with certain medical conditions may be more likely to get severely ill from COVID-19.  *CDC COVID Med. Conditions.*[4]  The CDC lists asthma as one of these conditions but only if the asthma is moderate to severe.  *Id.* According to his wife as reflected in the PSR and in the medical records, Mr. Bowers carries a general diagnosis of asthma.  But there is no indication of the severity of his asthma.  Mr. Bowers has not demonstrated that his asthma fits within the moderate to severe classification and that he could be more likely to get severely ill from COVID-19.

Second, the fact that Mr. Bowers may be at a heightened risk for serious complications from COVID-19 does not mean that he has shown he is likely to contract COVID-19 while incarcerated.  Mr. Bowers correctly observed that many BOP facilities have experienced COVID-19 outbreaks over the last year.  *Def.'s Reply*

---

[4]     These conditions include: cancer, chronic kidney disease, COPD, Down Syndrome, heart conditions, weakened immune systems from organ transplants, obesity (BMI > 30 kg/m²), severe obesity (BMI > 40 kg/m²), pregnancy, sickle cell disease, smoking, and Type 2 diabetes.  *See CDC COVID Med. Conditions.*  Moreover, the CDC has indicated that individuals with asthma (moderate-to-severe), cerebrovascular disease, cystic fibrosis, hypertension, non-organ transplant-related immunodeficiencies, neurologic conditions, liver disease, pulmonary fibrosis, Thalassemia, Type 1 diabetes, or who are overweight (BMI > 25 kg/m²), may  be more likely to get severely ill from COVID-19.  *Id.*

at 5. Even so, the Government is also correct that the BOP has implemented "measures [that] are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution." *Gov't's Opp'n* at 15. Moreover, the BOP has made substantial progress in inoculating both BOP staff and inmates and that vaccination process is ongoing. The BOP website states that it has received 107,675 doses of vaccine and has administered 109,657 doses. *Covid-19 Coronavirus*, BOP, *https://www.bop.gov/coronavirus/index.jsp* (last visited Apr. 2, 2021). There is some variation among different BOP institutions in their success in preventing outbreaks and the distribution of vaccine and without knowing which BOP facility will house Mr. Bowers, the Court cannot weigh the particularized risks to him of contracting COVID-19 in BOP custody. At most, the Court may conclude the prison environment is not an ideal setting for Mr. Bowers to practice social distancing and mitigate his potential risk of COVID-19 exposure. On balance the Court concludes that this risk, combined with Mr. Bowers' medical conditions, falls short of exceptional reasons that render his detention inappropriate.

Finally, even if the Court is sympathetic to Mr. Bowers' argument that he is not the "prototypical Armed Career Criminal," this does not mean he should be released pending appeal. 18 U.S.C. § 3143(b)(2) requires all ACCA felons be detained unless they fall within 18 U.S.C. § 3145(c). The Court's views on the seriousness of Mr. Bowers' predicate offenses do not supplant § 3143(b)(2)'s requirement that ACCA felons be detained. Such a reading of § 3145(c) would call upon the Court to draw imprecise lines among different types of prior offenses that all nonetheless qualify as

ACCA predicates.  The Court declines to take such a view and concludes that Mr. Bowers' ACCA predicates and his overall presentation do not amount to an exceptional reason for release pending appeal.

## IV.   CONCLUSION

The Court DENIES Jonathan Bowers' Motion for Release Pending Appeal (ECF No. 126).

SO ORDERED.

/s/ John. A Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of April, 2021