UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00151-JAW |
| | ) | |
| | ) | |
| JONATHAN BOWERS | ) | |
| | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a fifteen-year mandatory minimum sentence for illegally possessing a firearm, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), citing his health, acute family circumstances, and his lengthy sentence. The Court considered the defendant's individualized complex of circumstances and determined that it constitutes extraordinary and compelling reasons justifying release. The Court also concludes that the section 3553(a) factors favor release, in light of the seriousness of his offense, the time served, and the need for the sentence to fulfill the purposes of the law. Additionally, the Court concludes that whatever the possible risk of recidivism, the defendant has served a sufficiently long period of incarceration in view of the nature of his offense to meet the law's demand for just punishment. The Court reduces the defendant's sentence to time served followed by two years of supervised release.

## I.   PROCEDURAL BACKGROUND

On September 14, 2017, Jonathan Bowers pleaded guilty to one count of possession of a firearm by a prohibited person. *Min. Entry* (ECF No. 56). On

November 16, 2020, he was sentenced to 180 months incarceration, the mandatory minimum sentence required by law.  *J.* (ECF No. 120) (*J.*); *Statement of Reasons* at 2 (ECF No. 121).  On March 1, 2022, the Court of Appeals for the First Circuit affirmed the imposition of the 180-month mandatory minimum sentence pursuant to an Armed Career Criminal Act (ACCA).  *United States v. Bowers*, 27 F.4th 130, 133 (1st Cir. 2022).

On March 20, 2023, Mr. Bowers filed a pro se motion for reduction of his sentence.  *Mot. for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)* (ECF No. 143) (*Def.'s Mot.*).  The Court appointed counsel for Mr. Bowers, *Order Appointing Att'y* (ECF No. 145), and on April 14, 2023, Mr. Bowers filed a supplemental motion for compassionate release.  *Supp. Mot. for Compassionate Release* (ECF No. 149) (*Def.'s Supp. Mot.*).  On May 10, 2023, the Government opposed Mr. Bowers' motion. *Gov't's Resp. in Opp'n to Mot. for Compassionate Release* (ECF No. 150) (*Gov't's Opp'n*).  Finally, on May 23, 2023, Mr. Bowers filed his reply.  *Reply to Gov't's Resp. in Opp'n to Def.'s Mot. for Compassionate Release* (ECF No. 151) (*Def.'s Reply*).

## II.   FACTUAL BACKGROUND

### A.   The Offense of Conviction

On April 9, 2016, Mr. Bowers went to an auto mechanic garage belonging to his friend Justin Taylor in Chelsea, Maine to do some work on his pickup truck.  27 F.4th at 133.   An altercation ensued after Mr. Taylor accused Mr. Bowers of being rude to some of his customers and asked him to leave.  *Id.*  During the argument, Mr. Bowers "possessed a firearm and momentarily touched the firearm a couple of times

as Mr. Taylor became more and more aggressive" and then struck Mr. Bowers on the head with a wrench, rendering him unconscious.  *Order on Mot. for Release Pending Appeal* at 18 (ECF No. 136) (*April 2, 2021 Order*).  "[D]espite having a firearm that likely would have thwarted Mr. Taylor's wrench attack, Mr. Bowers did not pull it out."  *Id.*  Mr. Bowers "suffered a traumatic brain injury—a concussion" and "continue[d] to report physical complications from his assault including hearing loss for which he uses hearing aids, migraine headaches, vertigo spells with falling, a recent potential seizure, and concentration and memory issues."  *Id.* at 19.

Police were called to the scene, but neither Mr. Bowers nor Mr. Taylor was charged with any state law offense as a result of the incident.  27 F.4th at 133.  However, on November 10, 2016, a grand jury indicted Bowers for violating 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e)(1) by knowingly possessing a firearm despite having "previously been convicted of a crime or crimes punishable for a term of more than one year imprisonment."  *Id.*  On September 14, 2017, Mr. Bowers pleaded guilty to this charge.  *Min. Entry* (ECF No. 56).

### B.     Jonathan Bowers' Mandatory Minimum Sentence

On November 6, 2018, the Court ruled that Mr. Bowers was subject to the enhanced provisions of the ACCA and its corresponding guideline provision because of his four prior state of Maine burglary convictions, triggering a fifteen-year mandatory minimum sentence.  *Order on Sentencing Issues* at 2-12 (ECF No. 91) (*Sentencing Order*).  All but one of his burglary convictions arose from burgling an unoccupied storage trailer or abandoned home, and all these convictions occurred

3

between the ages of eighteen and twenty-two.  *April 2, 2021 Order* at 12.  He was twenty-eight when the incident leading to the firearms charge occurred.  *Presentence Investigation Report* at 2-4 (ECF No. 104).  He is now thirty-five years old.  *Id.* at 2.

Without the ACCA enhancement, the fifteen-year mandatory minimum would not apply to Mr. Bowers and his sentencing guideline range would have fallen to thirty-seven to forty-six months.  *Id.* at 31.  The Court previously stated, prior to Mr. Bowers' appeal, that "[i]f the First Circuit were to vacate the Court's application of the ACCA, the Court would have likely imposed a guideline sentence or less."  *Id.*

At sentencing, the Court observed that:

> as best it could determine, it was Mr. Taylor, not the defendant, who was the aggressor in the altercation.  Mr. Taylor became quickly angry and violent and lunged at the defendant swinging a wrench.  Mr. Taylor's initial statements about what happened, namely, that the defendant pulled a gun and that he swung the wrench only after the defendant pulled the gun, are clearly disproven by the video itself.
>
> . . .
>
> I actually commend the defendant for not pulling the gun.  Mr. Taylor is tall and imposing and he was getting visibly angry with the defendant, so much so that Mr. Taylor's sister stepped in-between the two men to try and keep them apart.  As Mr. Taylor became visibly more aggressive, the defendant took his right hand and briefly fidgeted with the Smith & Wesson, but he did not pull it out.  Within seconds, he received blows to the head and to the face that resulted in his traumatic brain injury.  So I credit the defendant, if he was going to carry a gun, which was a bad thing, at least he didn't pull it out, which is a good thing.
>
> It is striking that the victim, in an unprovoked assault who suffers a traumatic brain injury, faces 15 years in federal prison while the person who committed the assault walks.

*Tr. of Proceedings* at 64:2-9, 67:25-68:14 (ECF No. 135) (*Sentencing Tr.*).

Finally, the Court concluded:

4

> My conclusion is that the defendant clearly violated the law and he clearly merits punishment. What troubles me very greatly about this case is that despite the family urging me here to go below 180 and Mr. Morgan urging me to go below 180, I can't, I can't do it legally; I don't have the legal authority to go below 180. I would if I could; I can't. And [the defense attorney] knows that; [the prosecutor] knows that; and I want the family to know it. I would not impose this sentence if I didn't have to legally, but as a judge, I'm compelled to apply the law.
>
> I urge [the defense attorney], as I think he will do, to take the case to the First Circuit, and if the First Circuit, the appellate court decides I was wrong about the application of the 180, I would be more than happy to revisit his sentence and impose a lower one. But I -- my analysis of the law told me that I have to do this and that is what I will do.

*Id.* at 70:1-16. The Court imposed the mandatory minimum sentence of 180 months. *J.* at 2.

## III.   THE PARTIES' POSITIONS

### A.   Jonathan Bowers' Motion for Compassionate Release

Mr. Bowers' pro se memorandum lists several reasons for his motion, focusing primarily on the harshness of his sentence, his poor health, and his deteriorating family situation. *Def.'s Mot.* at 1-12. He asks the Court to reduce his sentence to time served or any lesser amount. *Id.* at 1.

Mr. Bowers begins by reiterating the Court's statements at sentencing about the severity of the mandatory minimum sentence and submits that because "the Court may reduce Bowers['] sentence below the mandatory minimum pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Bowers now moves for a reduction of his sentence." *Id.* at 3.

Turning to his health, Mr. Bowers notes that at sentencing the Court discussed his traumatic brain injury, vertigo, migraines, light sensitivity, and hearing loss as a result of Mr. Taylor's attack. *Id.* He adds that he "is also diagnosed with Major

Depressive Disorder, Opioid Use Disorder, and, Posttraumatic Stress Disorder." *Id.*
Mr. Bowers adds that he has completed numerous rehabilitative programs, including
Drug Abuse Education and Anger Management, and "is scored minimum security"
and awaiting transfer to a low-security facility. *Id.* at 3-4.

Next, Mr. Bowers turns to the welfare of his family and his two children: D.B.
and K.B., ages fifteen and eleven, respectively. Mr. Bowers' common law wife Jessica
Bowers was on disability when he was arrested and subsequently forced to move into
a one-room camper with the children. *Id.* at 4. Ms. Bowers has since moved to
Tennessee with K.B., but has abandoned D.B., who is not her biological child. *Id.*
D.B. has moved in with his biological mother, Tia Hatch, in Augusta, Maine. *Id.* Ms.
Bowers is refusing to allow K.B. any contact with the Bowers family. *Id.*

Mr. Bowers asserts that Ms. Hatch lacks the necessary health insurance to
cover D.B., "who has now twice attempted suicide over his father's incarceration and
his abandonment by Jessica." *Id.* In 2022, D.B. began cutting himself with razor
blades and twice attempted suicide by overdosing on medication—the first time he
did not receive treatment due to his lack of insurance; the second time he was
hospitalized. *Id.* at 4-5. Mr. Bowers submits that Ms. Hatch "is unable to adequately
care for D.B. and there is a possibility he may be again abandoned." *Id.* at 5.

Furthermore, Mr. Bowers' father, Bill Bowers, has been diagnosed with Major
Depressive and Bipolar Disorder and "has been hospitalized about a dozen times over
the past year for mental health issues related to Bowers' imprisonment, [D.B.]'s
behavior and the lack of contact with [K.B.]." *Id.*

Laying out the legal framework for compassionate release motions, Mr. Bowers submits that: (1) the Court has the authority to reduce his sentence below the mandatory minimum; (2) the "manifest injustice" of his sentence and "family collapse", including the lack of a caregiver for D.B., constitute extraordinary and compelling reasons to reduce his sentence; and (3), the 18 U.S.C. § 3553(a) factors weigh in favor of release, especially given the Court's prior statements that it would have imposed a guideline (or below) sentence absent the mandatory minimum.  *Id.* at 6-11.

## B.    Jonathan Bowers' Supplemental Motion for Compassionate Release

After Mr. Bowers was appointed counsel, his attorney filed a supplemental motion elaborating on the legal foundation for Mr. Bowers' claim for compassionate relief.  *Def.'s Supp. Mot.* at 1-7.

Mr. Bowers submits that the U.S. Sentencing Guidelines "do not constrain this Court in adjudicating prisoner-initiated (as opposed to BOP-initiated) motions for compassionate release."  *Id.* at 2 (citing *United States v. Ruvalcaba*, 26 F.4th 14, 18 (1st Cir. 2022)).  He adds that "the First Circuit has expressly held that a court may consider the length of a sentence alone as an extraordinary and compelling reason . . . and the imposition of a mandatory minimum sentence does not constrain a court's discretion to reduce a sentence.  *Id.* (citing *Ruvalcaba* and *United States v. Saccoccia*, 10 F.4th 1, 8 (1st Cir. 2021)).

Mr. Bowers asserts that he "sets forth 'a complex of circumstances' supporting a finding that the specific facts of his case present extraordinary and compelling reasons justifying a modification of his sentence," contending that "Bowers' family circumstances, length of sentence, use of his non-violent convictions from age 18 as predicate offenses under the [ACCA], rehabilitation, and medical conditions combined support a finding of extraordinary and compelling reasons to reduce his sentence." *Id.* at 3.

Mr. Bowers adds further that his "efforts at rehabilitation and mental health concerns deserve mention" as a factor favoring release. *Id.* at 6. If the Court were to release him, Mr. Bowers plans to live with his father. *Id.* at 7. He completed an Introduction to Commercial Driver's License (CDL) course while incarcerated and plans to train to work as a commercial driver. *Id.* Additionally, Mr. Bowers has been offered a job in an auto-detailing shop while he works towards his CDL. *Id.* Finally, Mr. Bowers had established medical and mental healthcare prior to his incarceration and promises to reestablish care if released. *Id.*

### C.    The Government's Opposition

In response, the Government submits that "the defendant presents circumstances that, on the whole, are neither extraordinary nor compelling, and that application of the 3553(a) factors to the defendant's case argues against early termination of his sentence." *Gov't's Opp'n* at 1.

The Government asserts that "[w]here a circumstance is largely the same as when a defendant entered BOP custody, his justification for seeking compassionate

8

release is neither extraordinary nor compelling, and thus not a basis for the Court to order compassionate release." *Id.* at 5 (citing *United States v. Black*, 2022 WL 1487035, at *2 (May 11, 2022)). In its view, "the Court should consider the extent to which any of Mr. Bowers' circumstances are new or unanticipated at the time of initial sentencing." *Id.* at 6.

The Government offers that "[t]he defendant's sentence was lawfully imposed, and was noted to be lengthy at the time of sentencing." *Id.* To the extent that Mr. Bowers relies on his family circumstances as an extraordinary and compelling reason justifying relief, the Government counters that "his family situation was presented to the Court at the time of initial sentencing" and "[i]t is unclear from the record that there has been any extraordinary change in this family circumstance since sentencing, or that the defendant's release would be likely to address those concerns." *Id.* at 7. Summarizing its view on the factors justifying relief, the Government states that "[n]one of this is to say the Court's discretion could not encompass a formulation of these factors possibly amounting to extraordinary circumstances. But the government respectfully submits that the factors presented in this case do not necessitate such a finding, and in this case do not in fact distinguish Mr. Bowers from the mine run of other similar defendants." *Id.*

Turning to the § 3553(a) factors, "the government again respectfully submits that Mr. Bowers is a danger to society who has a criminal history, including the present offense, of engaging in behavior that at the least disregards the risk of violence and danger to others." *Id.* at 8. The Government concludes that "the

defendant has failed to establish extraordinary and compelling circumstances warranting release, and he has failed to show that the 3553(a) factors weigh in favor of release." *Id.*

### D.   Jonathan Bowers' Reply

In reply, Mr. Bowers offers that the Government "concedes that the Court's discretion under existing case law permits it to consider a formulation of factors set forth in Bowers' initial and supplemental Motions for Compassionate Release to find extraordinary circumstances" but then "goes on to assert that the factors present in his case 'do not in fact distinguish Mr. Bowers from the mine run of other similar defendants.'" *Def.'s Reply* at 1 (quoting *Gov't's Opp'n* at 7). Mr. Bowers reiterates his circumstances and asserts that they are, in fact, different from the "mine run" of other cases the Government refers to. *Id.* at 1-4. He asserts that "[a]n individualized assessment of the many circumstances of Bowers' case and Motion supports a finding that there are extraordinary and compelling reasons to modify his sentence." *Id.* at 4. Finally, Mr. Bowers concludes that his "family circumstances, length of sentence, use of his non-violent convictions from age 18 as predicate offenses under ACCA, rehabilitation, and medical conditions combine to support a finding of extraordinary and compelling reasons to reduce his sentence." *Id.* at 4-5.

## IV.   LEGAL STANDARD

"Section 3582(c)(1)(A) authorizes a court to reduce a term of imprisonment when 'extraordinary and compelling reasons warrant such a reduction.'" *Ruvalcaba*, 26 F.4th at 18. "To grant the motion, the district court must find both that the

defendant has presented an 'extraordinary and compelling' reason warranting a sentence reduction, . . . and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'"   *Id.* at 18-19 (quoting § 3582(c)(1)(A)).

The United States Sentencing Commission's current policy guidance[1] for addressing compassionate release motions brought by the Director of the BOP, issued pursuant to Guideline § 1B1.13, "was last modified in November of 2018—before the F[irst] S[tep] A[ct] (FSA) amended the compassionate-release statute to allow for prisoner-initiated motions." *Id.* at 20.  In *Ruvalcaba*, the First Circuit resolved that district courts are not constrained by the Sentencing Commission's 2018 policy statement in adjudicating prisoner-initiated motions for compassionate release.  *Id.* at 22-23 (emphasizing that § 603(b) of the FSA "effected a paradigm shift in how compassionate release would function" and that "[g]iven the profound nature of this paradigm shift, it is fair to say that the 'purposes' and 'appropriate use' of the compassionate-release statute have swelled beyond those that inhered in the statute when the Sentencing Commission issued its original policy statement").

The First Circuit clarified that the absence of an applicable policy statement does not leave the district court's discretion "unbounded," rather it remains "circumscribed by statutory standards, which obligate the district court to find a

---

[1]     The Sentencing Commission's list of "four categories of extraordinary and compelling reasons: medical conditions; age; family circumstances; and a catch-all for other reasons deemed appropriate by the BOP. . . remains unchanged today." *Ruvalcaba*, 26 F.4th at 20 (citing U.S.S.G. § 1B1.13 cmt. n.1 (A) – (D)).  "[S]ection 1B1.13 also requires a finding that the defendant is not dangerous in order to grant compassionate release based on extraordinary and compelling reasons." *Id.* at 19-20 n.5.

reason that is both 'extraordinary and compelling.'" *Id.* at 23 (citing *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021) ("[T]he 'extraordinary and compelling' standard is logically guided by the plain meaning of those terms")). "[M]oreover, the current policy statement—though not 'applicable'—nonetheless may serve as a non-binding reference." *Id.*

Thus, until the Sentencing Commission updates its guidance applicable to prisoner-initiated motions, "the district courts will have to assess prisoner-initiated motions for compassionate release primarily through the lens of the statutory criteria." *Id.* "Ultimately, . . . it is within the district court's discretion—constrained only by the statutory criteria[2] and any applicable policy statement—to make that [individualized assessment of a myriad of factors], case by case." *Id.* at 27-28.  A court "may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief." *Id.* at 28.

If the prisoner meets the extraordinary and compelling circumstances standard necessary to justify compassionate release, "the district court must [also] consider any applicable section 3553(a) factors," *Id.* at 19, to "determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *Saccoccia*, 10 F.4th at 4 (omission in *Saccoccia*).  In particular, before granting the petition, a court must assess,

> [t]he nature and circumstances of the offense and the history and
> characteristics of the defendant, the need . . . to reflect the seriousness
> of the offense, to promote respect for the law, and to provide just

---

[2] The only "explicit limitation on what may comprise an extraordinary and compelling reason" is "that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 25 (alterations in *Ruvalcaba*) (quoting 28 U.S.C. § 994(t)).

punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; [and] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). "Though the [§] 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion," they "need only be addressed if the court finds an extraordinary and compelling reason favoring release." *Saccoccia*, 10 F.4th at 8.

The movant bears the burden of proving that he is entitled to a sentence reduction, and the Court has discretion to determine whether "the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *United States v. Texeira-Nieves*, 23 F.4th 48, 52 (1st Cir. 2022) (quoting *Saccoccia*, 10 F.4th at 4); *see Saccoccia*, 10 F.4th at 4 (stating that the First Circuit's standard of review "[r]ecogniz[es] that the compassionate-release statute provides that a district court's decision to grant or deny a compassionate-release motion is discretionary").

## V.   DISCUSSION

Mr. Bowers has offered extraordinary and compelling reasons justifying relief, the § 3553(a) factors weigh in favor of release, and he would not pose a danger to any person or the community if released.  Mr. Bowers' complex of circumstances, including the harsh mandatory sentence, his health, and his acute family situation—in particular his son's health—qualifies as extraordinary and compelling.  As the Court has stated previously, the § 3553(a) factors justified a sentence significantly

shorter than he has already served—much less the total sentence imposed—and today militate strongly in favor of relief.

### A.     Compassionate Release and Mandatory Minimum Sentences

As a threshold matter, the Court begins by confirming that it has the authority to award compassionate release to an inmate who has not yet served his mandatory minimum sentence.

Section 3582 does not reference mandatory minimum sentences but provides that a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c). In *Ruvalcaba*, the defendant had been sentenced to life imprisonment under an enhanced mandatory minimum penalty. 26 F.4th at 17. After Mr. Ruvalcaba's sentence was imposed, the First Step Act (FSA) amended the relevant mandatory minimum penalties, under which Mr. Ruvalcaba's mandatory minimum sentence would have been fifteen years, rather than life imprisonment. *Id.* Ruvalcaba petitioned for compassionate relief, offering the FSA amendments as an extraordinary and compelling circumstance, but the district court refused to consider these statutorily nonretroactive changes in the extraordinary and compelling analysis. *Id.* at 18.

The First Circuit disagreed, holding that the district court could consider the nonretroactive changes in determining whether to award Mr. Ruvalcaba compassionate release. *Id.* at 28. The *Ruvalcaba* Court stated:

> As a general matter, a district court, reviewing a prisoner-initiated motion for compassionate release in the absence of an applicable policy statement, may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason

14

> warranting relief.  It follows that a district court adjudicating such a
> motion may consider the FSA's non-retroactive amendments to the
> scope of the mandatory minimum penalties under section 841(b)(1)(A)
> on a case-by-case basis grounded in a defendant's individualized
> circumstances to find an extraordinary and compelling reason
> warranting compassionate release.   The court below erred by
> concluding, as a matter of law, that the FSA's prospective changes to the
> mandatory minimum penalties could not — even when considered on an
> individualized basis — support a reason for compassionate release.

*Id.* The implication is that because the changes were nonretroactive, Mr. Ruvalcaba's

mandatory minimum penalty of life imprisonment remained in effect; however, the

First Circuit permitted the district court to consider his claim for compassionate

release—which would, if granted, necessarily reduce his sentence below the statutory

mandatory minimum.

Other circuits have confronted this question more directly.  Analyzing this

issue as a matter of first impression, the Second Circuit stated in *United States v.*

*Halvon*, 26 F.4th 566, 570 (2d Cir. 2022) that "[w]e now explicitly hold that a

mandatory minimum sentence does not preclude a district court from reducing a term

of imprisonment on a motion for compassionate release."  *Id.* at 570; *see also United*

*States v. Owens*, 996 F.3d 755 (6th Cir. 2021) (reversing the district court's order

denying compassionate release and remanding to the district court where defendant

was originally sentenced to the mandatory minimum); *United States v. Black*, 999

F.3d 1071 (7th Cir. 2021) (vacating and remanding in the same situation).  The

*Halvon* Court reasoned that:

> This conclusion . . . follows from the language of § 3582(c)(1)(A).  There
> is no indication in the statutory text that compassionate release is not
> available to inmates sentenced to mandatory minimum terms.  Instead,
> § 3582(c)(1)(A) broadly permits a district court to "reduce the term of

imprisonment" once certain conditions are met. 18 U.S.C. § 3582(c)(1)(A).   The broad language in § 3582(c)(1)(A) reflects the intention behind the compassionate release mechanism, which was first introduced in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837 (Oct. 12, 1984).   The Senate Judiciary Committee report on the Sentencing Reform Act explained that compassionate release would address "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances," and it did not limit such unusual cases to non-mandatory minimum terms.   S. Rep. No. 98-225, 1983 WL 25404, at *55 (1983).

*Id.* at 570.

Finally, a district court in this circuit addressed this issue in *United States v. Grajeda*, No. 19-10395-LTS, 2022 U.S. Dist. LEXIS 165679 (D. Mass. Sep. 14, 2022), and reached the same conclusion.   In *Grajeda*, the defendant had been sentenced to a sixty-month mandatory minimum sentence, but the district judge awarded her compassionate release after serving only thirty-six months.   *Id.* at *1-2.   The district judge observed that "[n]o party has suggested the mandatory-minimum sentence that applied in Grajeda's case presents an additional hurdle to compassionate release, and other courts have found defendants eligible for compassionate release from such sentences."   *Id.* at *6 n.3 (favorably citing *Halvon*, 26 F.4th at 569-70).

Likewise, the Government in this case does not challenge the Court's authority to reduce Mr. Bowers' sentence.   *See Gov't's Opp'n* at 6 (the "scope of changed circumstances a district court can consider is broad, and does not prohibit reduction below mandatory minimums legally imposed").   The Court concludes that 18 U.S.C. § 3582(c)(1)(A) as interpreted by the First Circuit in *Ruvalcaba* permits compassionate release even before a defendant has served his mandatory minimum sentence, provided that his "complex of circumstances" meets the statutory criteria.

16

**B.      Jonathan Bowers' Motion for Compassionate Release**

**1.      Extraordinary and Compelling Reasons**

**a.      The Guidelines: Current and Proposed**

The Court turns to Mr. Bowers' specific "complex of circumstances," concluding that it warrants relief.  The Court begins by observing that *Ruvalcaba* counseled a flexible reading of the statutory requirement that extraordinary and compelling circumstances must be "consistent with applicable policy statements issued by the Sentencing Commission."   26 F.4th at 21, 28 (noting that "the Sentencing Commission's silence does not suggest that it regards any part of its current policy statement as applicable to prisoner-initiated motions for compassionate release" and instead permitting courts to "consider any complex of circumstances raised by a defendant").

Since *Ruvalcaba*, however, the Sentencing Commission obtained a quorum and promulgated "preliminary unofficial text of final amendments to the federal sentencing guidelines, which was submitted to Congress on April 27, 2023"[3] and will take effect on November 1, 2023, provided Congress does not disapprove.   The proposed amendments, if adopted, could constrain the Court's consideration of some of the arguments in his motion for compassionate release.   First, to the extent Mr. Bowers is relying on his medical condition to support his motion, the proposed amendments would make his physical ailments—traumatic brain injury, vertigo, migraines, light sensitivity, and hearing loss—insufficient to justify release.   This is

---

[3]      *Adopted Amendments (effective November 1, 2023)*,
https://www.ussc.gov/guidelines/amendments (*2023 Amendments*).

because the proposed amendments together with the existing guidelines require a much more dire set of medical diagnoses than the conditions Mr. Bowers presents. *Id.* at 1-2. Next, even though Mr. Bowers contends that his rehabilitative efforts support his early release, the proposed amendments provide that rehabilitation, standing alone, would not justify release—although a court may consider rehabilitation "in combination with other circumstances" in determining whether to grant a reduction and, if so, how much of a reduction to grant. *Id.* at 4. The amendments do not directly address how a court should consider the imposition of a mandatory minimum period of incarceration, but they deal with an "unusually long sentence" and they do so in such a way as to appear to limit the Court's consideration of the fifteen-year sentence the Court imposed here.[4] *2023 Amendments* at 3. The amendments also address how a court should treat arguments about family circumstances. In general, the amendments define family circumstances to require the incapacitation or death of a caregiver, which would not apply to Mr. Bowers' case, but extend to situations "similar in kind" to incapacitation of a caregiver. *Id.* at 2. For reasons the Court expands upon later, the Court views Mr. Bowers' family circumstances as supporting his early release even under the more restrictive provisions of the amendments. Finally, the amendments contain a catch-all provision:

> (5)  OTHER  REASONS.—The  defendant  presents  any  other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs

---

[4]     The amendments provide that a defendant must have served at least ten years to be considered for release due to the imposition of an unusually long sentence. Mr. Bowers has served less than six years. *Gov't's Opp'n*, Attach. 1, *Sentencing Monitoring Computation Data* at 2 (*BOP Sentencing Data*).

         (1) through (4), are similar in gravity to those described in paragraphs
         (1) through (4).

*Id.* at 3.  In the Court's view, this provision is similar to *Ruvalcaba*'s "complex of circumstances" standard that is currently the law of the First Circuit.

    *Ruvalcaba's* "complex of circumstances" guidance was grounded in the premise that none of the Sentencing Commission's existing policy statement is "applicable" to prisoner-initiated policy statements.  The first proposed amendment provides that the policy statement would now apply to motions initiated by "Bureau of Prisons or the defendant."  *Id.* at 1.  The Court presumes that these amendments—if and when they take effect—would be adopted by the First Circuit as applying to prisoner-initiated motions.  Regardless of whether the proposed amendments take effect this November, *Ruvalcaba* is the law of the circuit and the amendments are not yet law.  The Court will follow *Ruvalcaba's* guidance that it may consider Mr. Bowers' entire "complex of circumstances."[5]

### b.  Jonathan Bowers' Complex of Circumstances

    Mr. Bowers' complex of circumstances is extraordinary and compelling.  The Court considers his health, his family situation, his rehabilitation, and the length of his sentence as together justifying release.

---

[5]  The Court observes that, even if were to apply the proposed amendments, it would reach the same conclusion.  The amendments generally loosen the existing criteria for compassionate release and add a catchall provision providing that courts may consider any other non-enumerated "other circumstance or combination of circumstances that . . . are similar in gravity to" the enumerated circumstances.  *Id.* at 3.  Absent additional guidance, the Court does not view this provision as substantively different from *Ruvalcaba's* "complex of circumstances" formulation.

As the Court observed at sentencing, Mr. Bowers "suffered a traumatic brain injury—a concussion" and "continue[d] to report physical complications from his assault including hearing loss for which he uses hearing aids, migraine headaches, vertigo spells with falling, a recent potential seizure, and concentration and memory issues." *April 2, 2021 Order* at 19. A December 29, 2022 BOP medical report reflects that Mr. Bowers suffers from Post Traumatic Stress Disorder and Major Depressive Disorder, "has reported significant trauma and depressive symptoms," and "has had difficulty conveying his thoughts, memories, and emotions" since his Traumatic Brain Injury (TBI). *Id.*, Attach. 1 at 18 (*Add'l Attach.*). Although these conditions do not by themselves justify release, they contribute to the Court's analysis of the proper length of Mr. Bowers' sentence, especially since he sustained these injuries as a consequence of Mr. Taylor's assault, which led to Mr. Bowers' lengthy incarceration.

Turning to the family situation, in the Court's view, the situation involving Mr. Bowers' son, D.B., comes very close to the incapacitation of a caregiver described in the proposed amendments and the Court is particularly concerned about D.B. In his motion, Mr. Bowers says that Jessica, his ex-wife, left the state of Maine with their daughter, K.B., and "abandoned" D.B., who is not her biological son, leaving him in Maine. *Def.'s Mot.* at 4. D.B. was placed with Ms. Hatch, who is D.B.'s biological mother, but according to the record, Ms. Hatch is unable to properly care for D.B. and does not maintain health insurance on D.B. to allow him to obtain counseling. *Id.* In 2022, D.B. began cutting himself with razor blades and has since twice attempted suicide by overdosing on medication "in despair of his father's incarceration and his

abandonment by Jessica." *Id.* The Court accepts Mr. Bowers' argument that, as D.B.'s father, if released from incarceration, Mr. Bowers would be able to provide care for D.B. and this may ameliorate D.B.'s issues.

More recently, the Court received letters from three persons urging the denial of Mr. Bowers' motion for compassionate release. After consulting counsel, the Court supplemented the record with these letters but placed them under seal essentially because they reveal family dysfunction, and the Court allowed Mr. Bowers to supplement the record further with a limited explanation.[6] Contrary to their contents, in the circumstances here, the Court views the letters, particularly the ones involving Mr. Bowers' family members, as supporting his release. Attorney Morgan accurately summed up the situation in his supplemental motion when he wrote that the "family described in Bowers' *pro se* motion is a far cry from the cohesive and supportive family that appeared for his sentencing back on November 16, 2020." *Def.'s Supp. Mot.* at 3. The Court recalls well the sentencing hearing and the unified front Mr. Bowers' family, including his then wife, D.B., and his daughter, presented, urging the Court to be lenient and worrying about the impact of his incarceration on the family.

A common but most unfortunate effect of incarceration is that it often removes a parent from family life for an extended period, and the parental absence can work an insidious impact on the family and the missing parent's relationship with his

---

[6] Even though these letters could be considered similar to sentencing letters and therefore subject to the right of public access under *United States v. Kravetz*, 704 F.3d 47 (1st Cir. 2013), the First Circuit also commented that sealing may be appropriate for information regarding family issues that has a limited impact on the issues before the court. *Id.* at 62-63.

spouse and children. This is a case in point. The Court cannot know whether this type of family dissolution would have occurred even if Mr. Bowers had been released; however, the level of dysfunction revealed here suggests that it would be compassionate to release Mr. Bowers so that he can attempt to repair or at least minimize the obvious damage that his incarceration has caused his family.[7]

Consistent with the proposed amendments, the Court also considers Mr. Bowers' rehabilitation, not standing alone, but in combination with other matters. BOP records indicate that Mr. Bowers has completed courses in Drug Abuse Education, Introduction to CDL, Anger Management, Health and Wellness, and Hobby Craft, and is currently participating in College Correspondence. *Add'l Attach.* at 3. Mr. Bowers has also provided a BOP record indicating that BOP has "scored" him for a transfer to a minimum-security facility. *Id.* at 6. BOP has also scored Mr. Bowers as "good" for program participation, family/community, and living skills and has scored him as "none" for discipline and violence. *Id.* If released, he intends to continue working towards employment as a commercial driver.

The Court finds that this complex of factors, taken together, constitutes an extraordinary and compelling reason justifying relief. The Court's conclusion is also bolstered by—but not reliant on—consideration of Mr. Bowers' disproportionately harsh sentence. In *Saccoccia*, the First Circuit assumed—but, pointedly, without deciding—that "length of sentence may itself constitute an extraordinary and

---

[7]    The Court expresses no opinion on the contents of the letters other than to suggest that to the extent Mr. Bowers might be able to restore his family cohesiveness, it seems apparent he cannot effectively do so while incarcerated.

compelling reason for compassionate release." 10 F.4th at 8. *Ruvalcaba*, decided six months later, did not address this issue directly but held that the existing policy statement did not apply to prisoner-initiated motions (another question *Saccoccia* had left unresolved) and permitted courts to broadly consider "any complex of circumstances" raised by a defendant. 26 F.4th at 28.

Despite the seemingly restrictive language in the proposed amendments, the Court assumes that, under *Ruvalcaba* and *Saccoccia*, it may consider the length of Mr. Bowers' sentence as a factor in the compassionate release analysis.[8] The Court's view of the incident and Mr. Bowers' culpability are unchanged since sentencing, where it observed that "[i]t is striking that the victim, in an unprovoked assault who suffers a traumatic brain injury, faces 15 years in federal prison while the person who committed the assault walks." *Sentencing Tr.* at 68:11-14. The Court also "expressed its belief, that if the 180-month sentence were not mandatory, the Court would not have imposed such a lengthy sentence, given its assessment of Mr. Bowers' history and characteristics, the nature and circumstances of his offense, and the other sentencing factors under 18 U.S.C. § 3553(a)." *April 2, 2021 Order* at 16. Had the ACCA enhancement not applied and triggered the 180-month mandatory minimum, Mr. Bowers' guideline range would have been thirty-seven to forty-six months and

---

[8]     Whether the proposed amendments will allow consideration of an unduly harsh sentence, such as the one here, beyond the proposed "unusually long sentence" provision, is unclear. The amendments may allow a court to consider an unduly harsh sentence under the "other reasons" provision. In any event, as 18 U.S.C. § 3582(c)(1)(A) incorporates the factors under 18 U.S.C. § 3553(a) to the compassionate release analysis, the Court concludes that it has the authority under 18 U.S.C. § 3553(a)(2)(A) to consider the harshness of Mr. Bowers' fifteen-year mandatory minimum sentence under the need for the sentence to "reflect the seriousness of the offense" and to "provide just punishment for the offense."

the Court would have imposed a sentence within or below that range.  Mr. Bowers has now served more time than that upper point of the non-ACCA guideline range.

This significant disparity between the Court's assessment of the 18 U.S.C. § 3553(a) factors and the mandatory minimum it was bound to impose—more than eleven years beyond what would have otherwise been the guideline range—adds to Mr. Bowers' complex of circumstances favoring release.

In sum, the Court has assessed Mr. Bowers' individualized circumstances and finds that his complex of circumstances—including his health, his family situation, his disproportionately lengthy sentence, and his rehabilitation—constitutes an extraordinary and compelling reason warranting compassionate release.

## 2.     The Section 3553(a) Factors

Before granting a motion for compassionate release, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a), including "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

The Court has made clear its view that "if the 180-month sentence were not mandatory, the Court would not have imposed such a lengthy sentence, given its assessment of Mr. Bowers' history and characteristics, the nature and circumstances of his offense, and the other sentencing factors under 18 U.S.C. § 3553(a)." *April 2, 2021 Order* at 16.

Regarding the nature and circumstances of the instant offense, Mr. Bowers unquestionably should not have possessed a firearm, but in the Court's view Mr. Taylor was the aggressor, and Mr. Bowers exercised commendable restraint in not drawing the firearm before Mr. Taylor struck him over the head with a wrench, causing serious injury.

Regarding Mr. Bowers' history and characteristics, he is 35 years old and, according to BOP medical personnel "walk[s] slowly with aid of a cane." *Add'l Attach.* at 16. The mandatory minimum enhancement was triggered by his four prior burglary convictions—all committed when he was between the ages of 18 and 22, with the most recent occurring in 2010. Mr. Bowers suffers vertigo, migraines, light sensitivity, and hearing loss as a result of his traumatic brain injury and has been diagnosed with Major Depressive Disorder, Opioid Use Disorder, and Posttraumatic Stress Disorder. His record while incarcerated reflects nonviolence and rehabilitation, and Mr. Bowers plans, if released, to live with his father and work at a friend's auto-detailing shop as he continues working towards a commercial driver license and employment in that field. Mr. Bowers avers that he will reestablish medical and mental healthcare treatment he had sought prior to his incarceration.

This is not to say that Mr. Bowers poses no risk of recidivism. Mr. Bowers committed four burglaries from 2006 through 2010. *Sentencing Order* at 4. He was involved in an odd incident with his neighbor on May 6, 2015, which the Court described briefly at the sentencing hearing and decided not to rely on. *Sentencing Tr.* at 25:10-27:3. Despite multiple felonies and in violation of the law, he was carrying

a firearm in a holster on April 9, 2016. He was involved in the altercation with Mr. Taylor, and while he was incarcerated, he was involved in a dust-up with another inmate. Based on his criminal history, his hidden carrying of a firearm in a holster before the Taylor altercation after having been convicted of multiple felonies, and the incident involving a neighbor on May 6, 2015, Mr. Bowers has a knack for being where trouble will find him. The federal prosecutor has maintained throughout this case that Mr. Bowers "is a danger to society who has a criminal history, including the present offense, of engaging in conduct that at the least involves the risk of violence and danger to others." *Gov't's Opp'n* at 8.

Even though the Court cannot guarantee that trouble will not find Mr. Bowers again, the Court has balanced the risk of recidivism, which though possible seems improbable, against the other factors in § 3553(a). On balance, the Court has determined that Mr. Bowers' nearly six years of incarceration more than penalizes his criminal conduct on April 9, 2016, and society has fully satisfied its need for "just punishment".

Finally, regarding "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a), the Court finds that the period of incarceration Mr. Bowers has already accomplished those goals. BOP calculates that, as of March 21, 2023, Mr. Bowers had served roughly five years and seven months of his sentence—and thus by now he would be approaching the six-year mark. *Sentencing Data* at 2. Absent the ACCA enhancement, Mr. Bowers' guideline range for this offense would

have been thirty-seven to forty-six months.  Mr. Bowers has thus already served roughly two years beyond what would have been the top of that guideline range.  In the Court's view, the sentence already served satisfies § 3553(a)'s requirement that the sentence reflect the seriousness of the offense, promote respect for the law, and provide just punishment.  Analysis of the § 3553(a) factors thus yields nothing that would prevent Mr. Bowers' compassionate release.  Rather, they strongly weigh in favor of his motion.

In sum, after considering the factors set out in § 3553(a), Mr. Bowers' complex of circumstances constitutes an extraordinary and compelling reason warranting relief, he is not a danger to the safety of any other person or to the community, and release is consistent with the First Circuit's guidance in *Ruvalcaba*.  The Court reduces Jonathan Bowers' sentence to time served and wishes him well upon his return to the community.  The Court also hopes that Mr. Bowers will comport himself in a constructive and crime-free manner consistent with the faith the Court has shown in him by its compassionate release.

## VI.   CONCLUSION

The Court GRANTS Jonathan Bowers' Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) (ECF No. 143).  Mr. Bowers' sentence on Count One of the Indictment charging a violation of 18 U.S.C. §§ 922(g)(1) and 924(e) is REDUCED to time served followed by two years of supervised release.  All other terms and conditions previously imposed on Mr. Bowers' supervised release and

memorialized in this Court's November 16, 2020 Judgment (ECF No. 120) remain in effect.

      SO ORDERED.

_/s/ John A. Woodcock, Jr._
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 7th day of August, 2023.